127    249
f132   283

127    249
138    130

127    249
144    243

## L. A. PAGE & SON, Appellees, v. NICHOLAS GRANT, Appellant.

**Mechanic's lien:** SUBCONTRACTOR'S CLAIMS:   PAYMENTS TO CONTRACTOR.
1  Where the owner of a building ascertained during the progress of its construction and before all payments had been made to the contractor, that subcontractors were furnishing material which had not been paid for, he was not justified in making the subsequent payments to the contractor to the prejudice of such materialmen, although in accord with the contract.

**Evidence:** SUFFICIENCY OF OBJECTION. In an action by subcontractors against the owner of a building for material furnished, an objection to the introduction of notices of plaintiff's claims, served on the owner, that the same were incompetent, irrelevant, and immaterial and not the notices contemplated by the statute, was insufficient to raise the question of the sufficiency of the proof of service of such notices either in the trial court or on a trial *de novo* on appeal.

**Actions:** RECOVERY FROM OWNER.  Where an action by materialmen
3  is based on the theory that they were subcontractors, a recovery can not be had against the owner on the ground that material was furnished directly to him or that he promised to pay for the same.

Subcontractor's lien: TIME OF FILING STATEMENT. Where the last item for material furnished by a subcontractor was delivered upon the premises for use in the construction of the building in question, the date at which such material was furnished may be used in determining whether the subcontractor's statement of his claim was filed in time, although the material was afterwards used in another structure.

Subcontractor's statement: DRAYAGE ITEMS. A charge in a subcontractor's account for drayage will not defeat his claim for a lien, where such charge was made under an agreement that it should be added to the contract price.

Subcontractor's claim: LIABILITY OF OWNER. Where there was due the principal contractor more than the amount of a subcontractor's claim at the time the owner of the building was notified thereof and the subcontractor perfected his lien, subsequent payment by the owner to the contractor of the full contract price, rendered him personally liable for the subcontractor's claim.

Abandonment of contract: EXPENDITURE BY OWNER. Where a contractor abandoned his contract and the owner was compelled to expend money in completing the building, he may deduct from the sum in his hands due the contractor the amount of such expenditure before paying subcontractor's liens.

*Appeal from Cerro Gordo District Court.*—HON. J. F. CLYDE, Judge.

SATURDAY, APRIL 8, 1905.

ACTIONS to enforce mechanics' liens against the property of the defendant, Grant. The trial court rendered judgment against the principal contractor for the sum of $1,-170.75, and established liens against the owner of the property to the amount of $842.88. Both parties appeal, but as defendant was the first one to perfect an appeal, he will be called " appellant." *Affirmed* on plaintiff's appeal. *Modified* on defendant's appeal.

*Glass, McConlogue & Witwer,* for appellant.

*Blythe, Markeley & Rule* and *Cliggitt, Rule & Keeler,* for appellee.

DEEMER, J.—On or about July 11, 1901, defendant, Grant, as owner, entered into a contract with one Bushman, as principal contractor, to erect a house for him (Grant) upon certain lots in the city of Mason City for the agreed price of $2,600 and a certain house which then stood upon the lots. By the terms of the writing made between the parties, Bushman was to erect a two-story frame house,

the same to be built as Joe Barlow's house. The roof to be painted, omitting doors in cupboard or dining room side. Outside wall to be sheeted, papered and sided, inside wall to be plastered. First floor lining to be sheeting boards. Finish flooring maple. All other floors to be No. 2 fence flooring. The second story floor to be a single floor. Labor and material to be as good as Barlow's. All outside and roof to receive two coats of paint. All oak to receive two coats of filler and two coats of varnish. Pine to have two coats of varnish. All according to the drawings, plans and specifications to their fullest meaning and intent, and the said party of the second part covenants and agrees to pay unto said party of the first part for the same, the sum of twenty-six hundred ($2,600.00) dollars and the old house on lot ———— dollars lawful money of the United States in payment as follows: The sum of $500.00 when the stone wall is finished; $300.00 when sheeted to the square; $300.00 when main roof is on; $500.00 when ready for plastering; $500.00 when plastering is finished; $500.00 when building is completed.

Plaintiffs Page & Son furnished certain lumber and building material for the structure, the first item being delivered August 19th and the last on October 28, 1901. The Mason City Manufacturing Company also furnished material for the building, the first item being delivered October 24th and the last on November 4, 1901. It filed a statement for a mechanics' lien and afterwards assigned its claim to the plaintiff. The Knapp Hardware

Company also furnished material for the improvement, the first item of which was delivered August 21st and the last on November 13, 1901. It also filed its statement for a mechanic's lien, and then assigned its claim to the plaintiff. Questions common to the three claims we shall first decide.

I. Defendant insists that, as he paid the entire purchase price to the contractor in strict accord with the terms of his contract, he cannot be made liable to subcontractors 

**1. MECHANICS' LIENS: subcontractors' claims; payments to contractor.** for any further or greater sum. But he admits in this connection that during the progress of the work, and before all the payments were made, he acquired knowledge from certain subcontractors that they were furnishing materials for his building, which had not been paid for — as to one of them before the last two payments were made, and as to the other before the last payment was made. As to these the owner was not, under our more recent holdings, as well as some of the earlier ones, justified in paying the principal contractor, even in strict accord with the terms of the contract. *Queal v. Stradley,* 117 Iowa, 750; *Simonson Co. v. Bank,* 105 Iowa, 264; *Lumber Co. v. Adams,* 107 Iowa, 672; *Lumber Co v. Thomas,* 106 Iowa, 154; *Iowa Stone Co. v. Crissman,* 112 Iowa, 123. If the owner observes the law, he cannot, of course, be made liable to subcontractors in such a way or to such an amount as to increase or add to the contract price of the building. *Wickham v. Monroe,* 89 Iowa, 666. But by failing to observe his original contract as to time of payment, or to follow the law as to the rights of subcontractors, he may become liable for more than the original contract price. See cases hitherto cited.

II. Next it is contended that, as the mechanic's lien claimants or their assignee did not serve notices as required by section 3093 of the Code, relating to the perfection of 

**2. EVIDENCE: sufficiency of objection.** subcontractors' liens, nothing should be allowed either Page & Son or the Mason City Manufacturing Company, under the doctrine of *Frost v. Rawson,* 91

Iowa, 553, and other like cases. Going to the record, we find that the objection is not that no notice was in fact given, or to the form thereof, but to the proofs of service thereof. There was an unverified return on each notice, signed by one J. S. Confer, who it seems was the sheriff of Cerro Gordo county, but who did not sign the returns as such. When these notices were offered, one was objected to as incompetent, immaterial, and not a notice contemplated by the statute in cases of this kind. Manifestly, this objection does not go to the proof of service, and it was properly overruled. The objection to the notice of the manufacturing company claim was " incompetent, immaterial, irrelevant, and shown by the return of the officer as not being service of notice on the defendant as contemplated by the statute." This objection is a little ambiguous. It certainly did not advise the trial court that the return of service was objected to, or that there was not proper proof of service. Indeed, if such an objection had been made in the trial court, it might easily have been cured. The case is triable *de novo,* but in the light of objections made to the testimony in the trial court, and of what was understood to have been the purport of the objections there. An objection should be such as to apprise the trial court of the exact point upon which counsel relies. *Brier v. Davis,* 122 Iowa, 59. This is especially true as to such technical objections as were here interposed. The objection recognized the return as having been made by an officer, and it is only by inference that we may say that the return of the officer or the proof of service was challenged. As this is a technical matter, counsel may not well complain of a technical ruling. Had the exact point been made which is now relied upon, plaintiff might easily have cured the objection by producing the man who made the return, or by the filing of an amended return; and, unless the point was clearly and specifically made in the trial court, it should not be considered here. As this was not done, the objection is without merit.

III.   Before going to the separate claims, it is perhaps well to consider plaintiff's appeal.   It contends that it should have had judgment against the owner for the full amount of all of its claims, because he did not pay according to the terms of his contract, but contrary thereto; because of fraud on the part of the owner and principal contractor in attempting to build for $2,600 a house costing from $3,000 to $4,000, thus depriving subcontractors of all right to recover; and that it should have judgment for the full amount of its claim as well as that of the manufacturing company, for the reason that the owner (defendant) promised to pay these claims.   It also insists that it should have judgment for the larger part of the hardware company claim, because it (the hardware company) furnished the material to Grant (the owner) under his promise to pay therefor.   The first point we shall consider more at length when taking up the separate claims.   As to the second, there is no such proof of fraud as to justify a finding that the transaction was not an honest one, or that the contract between the owner and the contractor was not in good faith.   Either or both were doubtless mistaken as to what it would cost to construct the building called for by the contract.   But there is no proof that either intended thereby to cheat, wrong, or defraud those who should furnish material or labor for the building.   The presumption, of course, is that the transaction was honest and fair; plaintiff has not overcome this presumption.

As to the third proposition, the pleadings are not such as to justify a recovery on the ground that the goods were sold directly to Grant, or that he promised to pay therefor in full. 3. ACTIONS: recovery from owner.   The action is bottomed on the theory that all the claimants were subcontractors, and their liens are sought to be established as such.   There is no merit in plaintiff's appeal, and as to it the case must be affirmed.

IV.   Some other things applicable to each and all of the claims should be set forth before taking them up separately. The contract price for the building, with the terms and times

of payment, have already been referred to, and need not be restated. It appears, however, that the principal contractor did not complete the building according to contract, and that he abandoned the work, and left it in an unfinished condi-. tion, compelling the owner to complete the same. This abandonment occurred on or about November 1, 1901, and to secure the completion of the house defendant was compelled to pay out to laborers and others the sum of $133.14.

V. Coming now to the separate claims, we find that L. A. Page & Son filed their statement for a mechanic's lien November 26, 1901. It is contended that their statement was not filed within thirty days from the date the last item was furnished. The last item on their statement is under date of October 28, 1901, and the next to last was October 21st of the same year. Claim is now made that the item under date of October 28th was for another building, and that, therefore, their statement was filed too late. An examination of the testimony shows, however, that this item was for material furnished for the construction of the house in question, and was delivered upon the premises for that purpose. That it was afterwards used for another structure is unimportant, although we may say that the evidence fails to show that it was so used. The statement was filed in time.

4. SUBCONTRACT-ORS' LIEN: time of filing statement.

Next it is argued that, as the statement included drayage, this is sufficient to defeat the claim. We do not think so. The item was put in under claim of an agreement that it should be added to and made a part of the contract price, and we think this claim is established. But, if not, there is no such showing in regard to it as would defeat this plaintiff's claim.

5. SUBCONTRACT-ORS' STATEMENT: drayage item.

Grant, the owner, had notice from Page & Son in September of the year 1901 that it was furnishing material to the principal contractor for his (defendant's) house, for which it was not being paid, and that it should look to him for the price. At that time there

6. SUBCONTRACT-OR'S CLAIM: liability of owner.

was more than $1,000 due the principal contractor. The balance due on the Page & Son claim when the mechanics' lien statement was filed was $500.07. As the owner paid out much more than this sum after notice of the Page & Son claim, and as Page & Son fully complied with the law in filing its statement and in the giving of notice, the trial court was clearly right in allowing this claim with interest, and in establishing the same as a lien upon the premises. See authorities hitherto cited.

As to the Mason City Manufacturing Company, which assigned its claim to the plaintiff, it appears that it filed its statement December 3, 1901. The balance due on its claim,

7. ABANDON-
MENT OF CON-
TRACT: ex-
penditure by
owner.

after allowing credits of $100 on October 21st and of $366.86 on November 21, is $447.60. The last item of this claim is under date of November 4th, so that the statement was filed in time. Grant, the owner, had notice on October 30th that this company was to deliver the goods which were largely sold after that date, and that they had not been, and would not in all likelihood be, paid for by the principal contractor. But on that date Bushman, the contractor, gave the manufacturing company an order on Grant for the sum of $500, " the last payment as per contract." This was accepted by Grant in the following language: " I hereby accept this order when the work on my building is done according to contract." On November 21, 1901, defendant paid the manufacturing company on this order the sum of $366.86, being the amount of the credit heretofore referred to. The full $500 was not paid because Grant, the owner, was compelled to pay laborers to secure the completion of his building the sum of $133.14. Grant, the owner, paid nothing to Bushman, the contractor, after receiving notice of the manufacturing company claim. Remembering that this is not an action upon the order or upon a promise of the owner to pay absolutely, but solely an attempt upon the part of the plaintiff, as the assignee of a

subcontractor, to enforce a subcontractor's claim, we have to inquire whether or not the manufacturing company was entitled to anything more than it obtained under the order. As the owner paid nothing to the contractor after notice of the manufacturing company claim, and as all payments theretofore made were in strict conformity with the terms of the contract, the decision of this point will turn upon whether or not the owner was entitled to pay the laborers hired by him to complete the house after the work was abandoned by the principal contractor. We think he was entitled to have his house completed for the contract price; and that when the contractor abandoned the work and thus compelled him to complete the job, he was entitled to pay the workmen so engaged from any balance which might then be due the contractor. He had theretofore, in so far as this lien claimant is concerned, paid the contractor in strict conformity to the terms of his contract, and when the manufacturing company made its contract with the principal contractor it was bound to know the then situation of affairs. The acceptance of the Bushman order was not an unqualified one, and, even if it were, as this action is not bottomed thereon, there can be no recovery upon the order itself. Defendant was entitled to have his building for the contract price, and so long as he did nothing to prejudice subcontractors, he was not liable for more than that sum.

In this connection appellee contends that payments were not theretofore made in conformity with the contract. We shall not set out the evidence on this subject. Suffice it to say that we think they were. The old house was delivered to the contractor almost at once, as it had to be, for it stood in the way of the new structure. The other payments down to and including the one made October 9th, amounting in all to $2,100, were, so far as this lien claimant is concerned, made in full accord with the terms of the contract. The real contention here is that the cellar and stone wall were not included within the contract, and that defendant, as owner,

should pay therefor independently of the contract price. There is an apparent ambiguity in the written contract with respect to this, but the parol evidence shows that this was included in the contract price.

The Mason City Manufacturing Company is not entitled as a subcontractor to more than it received on its order on the defendant, Grant; and, as the decree passed by the trial court evidently allowed something on account of this claim, it should be modified to this extent.

As to the hardware company claim: This was filed December 12th, and was for the sum of $119.33. The first item was under date of August 21st, and the last November 13th. No payments were ever made upon it. About $50 of this bill was furnished after the owner had undertaken to complete the building himself, and under a promise that he, the owner, would hold back enough of the contract price to pay the bill. The owner knew, before paying the order drawn upon him by Bushman to the manufacturing company, that the hardware company was furnishing hardware to complete the job, for which it was not being paid. He was not then paying in accord with the terms of his contract, but to complete the job himself, and to pay the balance of the contract price to the manufacturing company. He should have kept enough in his hands to pay for the material thus being furnished by the subcontracting hardware company, and, as he did not do so, he is liable for the material thereafter furnished, amounting to $46.84, with 6 per cent. interest from December 12, 1901, and a lien should be established for that amount in addition to the claim of Page & Son. Our conclusions do not exactly agree with those of the district court, and the case will be remanded for a decree in harmony with this opinion. Defendant will pay two-thirds and the plaintiff one-third of the costs of this appeal.

On plaintiff's appeal, *affirmed*. On defendant's appeal, *modified* and *remanded*: