CHICAGO LUMBER & COAL COMPANY, Appellant, v. B. F. GARMER, W. B. BASTIAN, MRS. W. B. BASTAIN, R. H. PARRY AND THE SHACKELFORD BRICK COMPANY.

**Mechanics' liens:** SUBCONTRACTORS: EVIDENCE. The owner of a building is not justified in making payments to a contractor with knowledge of the fact that subcontractors are furnishing materials which are unpaid for, although such payments are made in accordance with the terms of the contract. Evidence held insufficient to show knowledge of the owner that materials were being so furnished.

**Same:** BURDEN OF PROOF. The enforcement of a subcontractor's lien is governed by the original contractor's agreement, and he has the burden of showing that there are funds in the hands of the owner which are due the contractor.

**Subcontractors:** LIABILITY OF OWNER: NOTICE OF CLAIMS. Where the architect is in no manner authorized to act for the owner in the purchase of material for the construction of a building, his uncommunicated knowledge of the claims of subcontractors will not bind the owner.

**Building contracts:** ALTERATIONS: WAIVER. Where a contractor's written agreement for the construction of a building provides a specific method for authorizing any alterations in the plan of construction, the owner is not liable for changes made by the architect not in conformity with the contract, unless otherwise authorized or ratified.

*Appeal from Polk District Court.*— HON. WM. H. Mc-HENRY, Judge.

SATURDAY, NOVEMBER 17, 1906.

PLAINTIFF supplied B. F. Garmer materials with which to erect a dwelling house for Mrs. W. B. Bastian, and in this action prays judgment therefor against Garmer, and for the establishment of a mechanic's lien on the property. Judgment was entered against Garmer, but other relief was denied. The plaintiff appeals.— *Affirmed.*

*Clinton L. Nourse,* for appellant.

*Halloran & Starkey,* for appellees.    *Parker & Hartman,* for Shackelford Brick Co.

LADD, J.— The defendant, Mrs. W. B. Bastian, entered into a contract with her codefendant, B. F. Garmer, September 10, 1904, by the terms of which the latter agreed

1. MECHANICS' LIENS: subcontractors: evidence.

to furnish material for, and erect, a dwelling house on her lot for the consideration of $2,376. Thereafter Garmer contracted for the necessary lumber and mill work with plaintiff, who delivered goods to the value of $614.36 between October 1st and November 3d inclusive. On November 4th the contractor notified the architect that it was impossible for him to complete the contract, and three days later the architect certified that this was sufficient ground for its forfeiture. Thereupon Mrs. Bastian completed the house at an expense of $1,167.52. She had previously paid Garmer on certificates of the architect $600 October 17th, and the same amount October 28, 1904. These payments were according to the terms of the contract, and, as affecting them, the only issue to be determined is whether, at the time of making them, the owner had knowledge that plaintiff was furnishing the material. If she was aware of this, the law seems to be well settled that payment to the contractor will not constitute a defense. *Chicago Lumber Co. v. Woodside,* 71 Iowa, 359; *Simmonson Bros. Mfg. Co. v. Citizens' State Bank,* 105 Iowa, 264; *Wheelock v. Hull,* 124 Iowa, 752; *Page v. Grant,* 127 Iowa, 249. And the contract in substance so provided. See *Queal & Co. v. Stradley,* 117 Iowa, 748.

As bearing on Mrs. Bastian's knowledge the evidence is in sharp conflict. The manager of plaintiff testified to two conversations with her at his office. She denied having had one, and claimed that the other was subsequent to the

last payment. He is somewhat corroborated by the book-keeper of the company who, however, fixed the date two or three weeks later than the manager. On the other hand, he is somewhat discredited by other circumstances. He testi-fied that at the first interview she stated that " she was going to pay the bills so as to be safe." But, under an arrangement with the owner, one Perry was paying all the bills, and her husband testified that the manager had said to him that he was not certain whether it was Mrs. Bastian or Perry who had promised to pay. The manager denied this. Moreover, Mrs. Bastian claimed that the first time she had ever met the manager was at the architect's office subsequent to the forfeiture of the contract, and she is cor-roborated in this by the fact that Perry then introduced her to the manager, a circumstance unlikely to have occurred had the interviews taken place at his office as he testified. Both agree that she telephoned to him but once. The man-ager fixed the time as Monday after the first interview, while she said it was the day after the last payment. In this she is corroborated by the clerk of the architect, who recalled a conversation on that day in which she informed Mrs. Bastian, in response to a question where Garmer had obtained materials, secured telephonic connection with the plaintiff for her, and heard a conversation over the telephone substantially as testified by both parties. Garmer testified that when he was putting in the foundation Mrs. Bastian asked him who was furnishing the glass, that he informed her, and that she subsequently inquired of him whether he had paid plaintiff out of the first money given him. Mrs. Bastian admitted having made the inquiry with reference to the glass, but testified that it was a couple of days before he abandoned the contract, and that nothing was said con-cerning who was furnishing the materials. It will thus be seen that treating witnesses as of equal credibility the record warranted a finding that the talk over the telephone occurred subsequent to the last payment. While two wit-

nesses testified to a conversation at the office, they were not agreed as to the date, and Mrs. Bastian is corroborated by her husband in respect to the manager's doubt whether she promised to pay and also by the circumstance that she was introduced to the manager at the architect's office subsequent to the last payment. Her testimony is quite as reasonable as that of Garmer's, as she would be unlikely to make the inquiries concerning the art glass so long before it was required or her interview with the manager concerning the same. The evidence on the part of the defendant is quite as reasonable as that in plaintiff's behalf, and as the witnesses were before the district court, having superior advantages for weighing their credibility, we are not inclined to interfere with its finding that Mrs. Bastian was not advised that plaintiff was furnishing the materials prior to making the payments.

II. Appellant next insists that the forfeiture of the contract was irregular in that there was no certificate of the architect of grounds therefor, and that his certificate of

2. SAME: burden of proof. the cost of completing the house was not introduced in evidence. As already noted, the certificate first mentioned was proven. See *White v. Mitchell,* 30 Ind. App. 342 (65 N. E. 1061). If the last was essential the burden was upon the plaintiff to introduce it. The portion of article 5 of the contract involved reads:

In case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified

by the architects, whose certificate thereof shall be conclusive upon the parties.

The rule prevails that the subcontractor must enforce fore a lien will be enforced against the owner, to show that he cannot insist upon payments by the owner different in manner or in greater amounts than those stipulated in the contract, save as this rule may be modified by knowledge that the subcontractor is furnishing material and lumber on credit. *Stewart v. Wright,* 52 Iowa, 335; *Martin v. Morgan,* 64 Iowa, 270; *Epeneter v. Montgomery County,* 98 Iowa, 159. The burden is upon the subcontractor, before a lien will be enforced against the owner, to show that there was such an indebtedness on the part of the owner to the contractor either at the time the subcontractor's accounts commenced or later as will justify the court in decreeing a lien. *Parker v. Scott,* 82 Iowa, 266; *Martin v. Morgan,* 64 Iowa, 270. As the contract had been forfeited, the contractor, under the express conditions of the agreement, was not entitled to receive any further payment until the work was finished. The owner's indebtedness to the contractor could only be established by showing the completion of the work, and that the unpaid balance of the amount stipulated to be paid exceeded the expense incurred by the owner in completing the building. It is evident, then, that if the certificate of the architect, auditing the expense of completing the building, was essential, a point not decided, the burden was on the plaintiff to introduce it. See *American Bonding Company v. Gibson County,* 127 Fed. 671 (62 C. C. A. 397); *International Cement Co. v. Beifield,* 173 Ill. 179 (50 N. E. 716). It should be added, however, that the defendant introduced evidence showing that the reasonable expense of completing the house substantially equaled the unpaid balance of the contract, and therefore that nothing was due from the owner on this account.

III. Appellant also contends that knowledge of the architect that plaintiff was furnishing the contractor materials was notice to the owner on the ground that he was her agent. This necessarily depends upon the terms of the contract, as the record contains no other evidence of the architect's engagement.

**3. SUBCONTRACTORS: liability of owner: notice of claims.**

The contract prescribes the architect's duties specifically, none of which involved ascertaining the source of the materials used or laborers employed or whether payment therefor had been made. His only connection with these was the duty of passing upon the quality of materials, the character of the work, and in making estimates of what had been done as a basis of payment. In all respects his duties are those of an arbitrator between the parties, in matters specified. He was in the employment of one no more than the other, though doubtless he was to be paid for his services by the owner. But the mere payment of services does not render the payee an agent or employé. Conceding him to have been the agent of both parties in the matters enumerated, this would not indicate that he was authorized to act for the owner in any other affair. It is elementary that the principal can only be charged with knowledge of the agent when such knowledge is of matters pertaining to the particular transaction in which the agent is authorized to act. *Second National Bank v. Curren,* 36 Iowa, 555. Not being her agent in any matter connected with the purchase or payment of materials, the architect's knowledge, if any he had, that these were being obtained of plaintiff, was not chargeable to the owner.

IV. Compensation for extras is said to be due the contractor. Of these, moving a partition, enlarging the rear porch, and increasing the height of the wall were clearly alterations, and with reference thereto the contract provides that "no alterations shall be made in the work except upon written order of the architects; and the amount to be paid by the owner, or al-

**4. BUILDING CONTRACTS: alteration: waiver.**

lowed by the contractor by virtue of such alterations to be stated in said order. Should the owner and contractor not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Aticle 12 of this contract." These were made without such written order. The manifest object of such a provision was to cut off all possibility of controversy between the parties by fixing the increased compensation of the contractor in advance and to protect the owner against doubtful claims. Such agreements are uniformly enforced. *Abbott v. Gatch,* 13 Md. 314 (71 Am. Dec. 635); *O'Keefe v. St. Francis Church,* 59 Conn. 551 (22 Atl. 325); *Howard v. Ry.,* 24 Fla. 560 (5 South. 356); *Northern Light Lodge v. Kennedy,* 7 N. D. 146 (73 N. W. 524); *White v. Ry.,* 50 Cal. 417; *Monarch v. New Orleans,* 49 La. Ann. 991 (22 South. 259). This may be waived. *Badders v. Davis,* 88 Ala. 367 (6 South. 834); *Gibson County v. Motherwell Iron, etc., Co.,* 123 Ind. 364 (24 N. E. 115). Mrs. Bastian denied that she directed any of these alterations, or was aware of them until long after they had been made; and there was no evidence of ratification. Garmer's testimony was to the contrary. The district court must have found that there was no waiver of the condition quoted, and with that conclusion we are not inclined to disagree. Even if the architect orally ordered anything additional, this was without authority of the owner, and, in the absence of ratification, was not binding on her. *Starkweather v. Goodman,* 48 Conn. 101 (40 Am. Rep. 152; *Langley v. Rouss* (N. Y.), 77 N. E. 1168.

In excavating for the walls it was discovered that the earth was soft, being at the location of an old ditch which had been filled, and, as Garmer testified, the architect directed him to deepen the trench and put in a concrete footing. What the material above may have been does not appear. Appellant insists that the cost of digging and of the con-

crete were for extras, and not for alterations within the meaning of the above condition. The term " extra " in a builder's contract is something outside of or in addition to that exacted by the contract, and, if entirely independent and apart therefrom, might not be included in the term " alteration " as employed. But here there was merely a change in the depth of the foundation, whether of the same kind of material does not appear, owing to the condition of the soil. An alteration is defined as " a change effected; a change of form or state, especially one which does not affect the identity of the subject." Century Dictionary. To alter means to change or modify; to change in form without destroying identity. *Heiple v. Clackamas County,* 20 Or. 147 (25 Pac. 291). Black's Law Dictionary adds to the above definition, " to vary in some degree," and in 2 Am. & Eng. Ency. of Law (2d Ed.) the word is tersely defined " to make different from what it was." The Standard Dictionary says it means " to cause to be different in some respect; to make change in; vary in some degree without making entire change." See *Sessions v. State,* 115 Ga. 18 (41 S. E. 259). In *Davenport v. Magoon,* 13 Or. 3 (4 Pac. 299, 57 Am. Rep. 1), in construing a lease allowing alterations, the court said: " To alter or to make alteration in a building or thing, it is necessary to vary or change the form or nature of such building or thing without destroying its identity. The idea is that the identity of the subject is preserved, although the form or nature may be modified or changed." From these definitions it is very evident that the extending of the walls of this house deeper into the earth than was at first planned was a mere change without affecting the identity of the structure, and therefore an alteration within the meaning of the condition quoted. What has been said concerning the issue of waiver is applicable to this item.

The court did not err in dismissing the claim for extras, and the decree, denying relief against Mrs. Bastian, is *affirmed.*