HOLLIS A. RAWSON, v. GEORGE A. GRANT and THE UNITED STATES FIDELITY & GUARANTY COMPANY, Appellants.

**Principal and surety:** DISCHARGE OF SURETY. The fact that the 1 owner of a building, by the terms of his agreement with the contractor for its construction, may withhold money for the payment of liens which he may reasonably anticipate on account of the material furnished fails to do so, but pays the contractor according to the terms of his contract, will not operate to discharge a surety on the contractor's bond, where the contract and bond expressly provide that the contractor shall pay for all material and labor promptly, so as to prevent the filing of any lien or claim against the owner.

**Same.** A subcontractor's right to a lien is purely statutory, and its 2 establishment is not an adjudication affecting the liability of the surety on the contractors bond.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN,
Judge.

WEDNESDAY, APRIL 8, 1908.

SUIT to recover from the United States Fidelity & Guaranty Company upon a bond securing the performance of a building contract entered into by the plaintiff and George A. Grant.   There was a judgment for the plaintiff, from which the Fidelity & Guaranty Company appeals.— *Affirmed.*

*N. T. Guernsey* and *Chas. Hutchinson,* for appellant.

*Parker, Hewitt & Wright,* for appellee.

SHERWIN, J.— The plaintiff entered into a contract with George A. Grant, by the terms of which Grant undertook to erect for the plaintiff a cottage according to the plaintiff's plans and specifications for $2,200.   Grant gave the plaintiff a bond for $1,000 to secure the faithful performance of the contract, which bond was signed by the defendant, the United States Fidelity & Guaranty Company.   The contract between the plaintiff and Grant provided that the latter should provide all the material and perform all of the work necessary for the completion of the cottage in accordance with the plans and specifications, and that Grant should pay for all material used in the building, and for all labor performed thereon, promptly, so as to prevent any lien or claim being filed or held against said owner, and agreed to protect said owner against all such other liens or claims.   The contract further provided that eighty-five per cent. of the value of labor performed and materials furnished in place should be paid as the work progressed, upon written certificates of the architects to the effect that such payments were due; and, further: "If at any time there shall be evidence of any

lien or claim for which, if established, the owner or the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default." After the execution of the contract and bond Grant partly performed the contract, but he finally abandoned the work entirely, and the plaintiff was compelled to finish it, which he did at a cost of $160 more than the contract price. Prior to Grant's abandonment of the work the plaintiff made him two payments aggregating $1,000. After the contract was abandoned by Grant certain subcontractors established mechanic's liens, which the plaintiff paid.

It is unquestioned that, when the payments were made, the plaintiff knew that Grant was getting material from the parties who afterward established liens for the same, but did 1. PRINCIPAL not know that such material was not paid for. AND SURETY; discharge of By the terms of the contract the plaintiff had surety. the right to retain out of any payment then due or thereafter to become due an amount sufficient to protect himself against any lien or claim for which, if established, he might become liable; and the appellant contends that, when the contract contains such a provision, and the owner has knowledge at the time that he makes payment that subcontractors are supplying material, he makes such payment at his own risk, that the right to withhold such amount is for the better security of himself and the surety, and that a release of such security operates as a discharge of the surety from liability on account of liens established upon claims of which the owner had knowledge when he made the payments. We think the clause of the contract under consideration gave the plain-

tiff the right to withhold money for the payment of liens or claims which he might reasonably anticipate on account of the material furnished, and, if this were all of the contract to be considered in determining the question, the rights of the parties would probably be governed by the rule that the owner may not under such circumstances pay the principal contractor, even in strict accord with the terms of the contract. See *Page & Son v. Grant,* 127 Iowa, 249; *Queal v. Stradley,* 117 Iowa, 748; *Simonson Co. v. Bank,* 105 Iowa, 264; *Iowa Stone Co. v. Crissman,* 112 Iowa, 123. In this connection it should be said, however, that in most if not all of the cases cited above the owner had failed to comply strictly with all of the terms of the contract relating to payments, while in this case he had paid in strict accord therewith. But there is another provision of this contract which we think distinguishes this case from the cases cited, so far at least as the rights of the surety are concerned. This contract expressly provided that the contractor should pay for all material used in the plaintiff's building, and for all labor performed thereon, promptly, so as to prevent the filing of any lien or claim against the owner, and the contractor therein expressly agreed to protect the owner against all such liens or claims. These undertakings of the contractors became a part of the bond, and were therefore among the things which the surety undertook to have performed. In other words, while the plaintiff in his contract with Grant reserved the right to protect himself, if he considered it necessary to do so, the surety expressly agreed to see that Grant paid for all material and labor, so that the plaintiff would not be compelled to depart from the terms of payment agreed upon in the contract. The plaintiff had made the payments just as it was agreed that they should be made, and we know of no reason why the plaintiff might not rely upon Grant's promise to pay promptly for material and act on the supposition that he had done so. The surety, having undertaken to see that he did so pay, is surely in no situation to complain because the plaintiff relied upon

such promise and undertaking. That the plaintiff might rely upon this express agreement in the contract and bond and waive the right to withhold, for his own protection, money then due without releasing the surety, we do not doubt. A different holding would enable the surety to escape the precise liability it assumed, simply because the owner chose to rely upon its promise.

It is apparent from what we have already said that the establishment of the liens was not an adjudication between the plaintiff and the surety as to the latter's liability. As between the plaintiff and the subcontractors, the failure of the plaintiff to withhold payments due probably entitled them to liens because they were not bound by the contractor's absolute promise to pay them promptly for the material they might furnish. The statute was their protection, and not the contract or the bond. A subcontractor's right to a lien could not therefore, under the contract in question, affect the liability of Grant's surety.

2. SAME.

We think the judgment right, and it is *affirmed.*