ORCUTT COMPANY, Appellee, v. J. F. SCHLAPPI, Appellant, et al., Appellees.

MECHANICS' LIEN: Right to Lien—Perfecting of Lien by Materialman. Where an owner has knowledge that materials were furnished on credit, or has knowledge of such circumstances as would put him on inquiry, and where payment was not made strictly in accordance with the terms of the contract, the materialman had the right, under the law, to perfect his lien by complying with the statute.

APPEAL AND ERROR: Reservation of Grounds—Constitutional Questions Not Raised Below. A constitutional question may not be raised for the first time in the Supreme Court.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

OCTOBER 25, 1919.

REHEARING DENIED FEBRUARY 16, 1920.

SEVERAL actions in equity to establish and foreclose mechanics' liens were consolidated and tried together. The principal controversy now is between the owner, Schlappi, who is the appellant, and Superior Lumber & Coal Company, as to whether said lumber company is entitled to a

lien. The trial court found against the owner, and established the lumber company's lien, and entered a decree accordingly. A further statement of the facts will be given in the opinion. The owner, Schlappi, appeals.—*Affirmed.*

*Carter, Brackney & Carter,* for appellant.

*Milchrist, Scott & Pitken, Jepson & Stecker, O. D. Nickle, Pendleton & Wakefield,* and *C. L. Joy,* for appellees.

PRESTON, J.—1. The Orcutt Company seems to have commenced the first action, making the owner, the contractor, subcontractors, other lien holders, etc., parties defendant. Other cases were consolidated, the pleadings reformed, and the issue now arises on the cross-petition of the defendant lumber company. Some of the cases have been settled; and, as said, the principal controversy now is between the owner and the lumber company. There was a stipulation as to other defendants who were claiming liens, and providing for decree as to them, in case the lumber company is found entitled to a lien at all. Arp is the principal contractor. On May 5, 1913, Schlappi, the owner, entered into a contract with Arp, by which Arp was to furnish the materials and build certain dwellings on different lots for the sum of $14,450. There was a written contract between them, and appellant claims, also, that the contract was partly in parol, and that the verbal part was in reference to the roofs on some of the houses on Pierce Street, and that it was also agreed that the owner should let Arp have certain sums of money before they were due, according to the written contract, if Arp should need the money. The writing provided that $1,000 should be paid when the contract was signed; $2,000 on completion of the foundations of the Twenty-third Street houses; $1,000 on completion of the foundations of the Pearl Street house; $2,000 on comple-

1. MECHANICS' LIEN: right to lien: perfecting of lien by materialman.

tion of the brick walls of the Twenty-third Street houses; $1,000 on completion of the brick walls on the Pearl Street house; $1,000 on completion of the roofs on Twenty-third Street houses; $1,000 on completion of the roof of the Pearl Street house; $1,000 on completion of the plastering of the Twenty-third Street houses; $1,000 on completion of the plastering of the Pearl Street house; and the balance $2,450, 10 days after the satisfactory completion and acceptance of the buildings. No right was reserved in the contract to the owner to pay materialmen or subcontractors: that is, the contract did not provide that he should do so. The cross-petition of the lumber company alleges, in substance, that, about May 12, 1913, it entered into a parol contract with the contractor, Arp, to furnish building materials, to be used in the erection of three dwelling houses on one of the lots before referred to, and that, about June 11, 1913, it entered into another parol contract with him to furnish materials for the erection of another of the buildings before referred to, and on another lot; that, under said contracts, it furnished lumber and building material, set out in schedules attached; that the last item furnished under one of said schedules was October 31, 1913, and the last item in the other was furnished on the 7th of November, 1913; that, on November 11, 1913, it duly filed with the clerk its statements and claims for mechanics' liens, and on that day caused to be served on defendant Schlappi notices of its claim in due form; that there was due it from said Arp, on account of lumber and material so furnished for all the houses, $4,-903.78, with interest; that, during all the time it was furnishing said lumber and materials, the owner, Schlappi, had knowledge that it was so furnishing the same, and that the same were being purchased on credit, and were not paid for. Defendant Schlappi, in answer to the foregoing cross-petition, denied that the lumber and materials was delivered on the premises, and says that, if said goods were sold to de-

fendant, they were sold upon open account, and not for use in the buildings; denied that the prices charged were the agreed prices; alleged that he paid the principal contractor, strictly in accordance with the terms of said contract, which fact was known to the lumber company, that the work had not been completed on the buildings until the total sum of $11,000 was due Arp under the terms of the contract, and that said payments had been made, and that no other sum ever became due to Arp, that said Arp abandoned said contract, and said defendant subsequently completed the buildings at the expense of $3,200; denied that the prices charged were the fair and reasonable prices; and alleged that the lumber company knew that defendant was paying the contractor in accordance with the terms of the contract, and made no objection thereto, and that, therefore, it was estopped from claiming that the owner had no right to make the payments. The case was sent to a referee, to hear the testimony and make findings of fact. Exceptions to the report of the referee were filed by appellant, together with requests for other findings of fact, which exceptions were overruled by the court, and the report of the referee was approved and confirmed; and the court held that, under the law and the facts so found, the lumber company was entitled to judgment and to a mechanics' lien. Decree was entered accordingly, and appellant's motion to strike was overruled. The court also rendered a personal judgment against Arp, and in favor of appellant, on appellant's cross-petition against Arp, for $7,719.37, and in this is involved the amount which the court required appellant to pay the lumber company.

There are several disputed questions of fact, among them whether the lumber company delivered the materials on the premises; whether certain conceded duplications of doors were fraudulent; whether the lumber and materials were sold at the market price, or reasonable value without a

contract, or whether there was a contract, and further, what
the terms of the contract were, if there was one; whether
there was a change of the plans, in order that there might
be a charge for extras; whether Schlappi knew that Arp was
buying material from the lumber company, and whether
he was buying it on credit, or had knowledge of such circum-
stances as to put him upon inquiry; whether payments made
by Schlappi to Arp were in accordance with the terms of
the contract. There may be some other minor disputed
points.

Appellant has assigned errors in regard to these sev-
eral matters. The facts found by the referee, and confirmed
by the trial court, stated as briefly as may be, are that the
contract of May 5th was entered into as alleged; that it was
partly in writing and partly oral; that the written portion
provided, in part, that the buildings were to be constructed
according to plans and verbal agreements and specifications,
and the written portion also fixes the time of payment; that,
immediately after said contract was made, Arp started to
construct the buildings in substantial compliance with the
terms of the contract, and completed the foundations, brick
walls, roofs, plastering, and casing of the houses on Twenty-
third Street, and completed the foundations, brick walls,
and roof of the Pearl Street house; and that, under the
terms of the written portion of the contract, he was entitled
to $11,000 of the contract price; that Schlappi paid Arp cer-
tain moneys by check, some of which were according to the
terms of the contract; that several of these checks were en-
dorsed over by Arp to the materialmen; that Arp entered
into a verbal contract with the lumber company, at about
the time alleged, to furnish the lumber and material for the
construction of the buildings; that there were no definite
prices agreed upon between Arp and the lumber company
at this time; that Arp had been dealing with the lumber
company for some time previous, and there had been a gen-

eral understanding that Arp was to be charged prices that would yield the lumber company 10 per cent profit over and above the invoice price at the Sioux City office, and a reasonable margin for doing business, and delivery of material; that, while there was no set price of the amount to be charged, it was understood that the price would be the same as they had charged Arp theretofore, which was practically 10 per cent above the cost of material delivered on the job; and that this was after Arp had furnished the lumber company with a list of material for the buildings to be erected; and that the charges were so made; and that the prices charged were the fair and reasonable market value of the material furnished, and set out in the mechanics' lien statement; that Arp purchased all his material on credit; that payments were made by Schlappi to Arp from time to time under the contract, but not in strict conformity to the contract; that Schlappi knew at all times that the lumber company was furnishing lumber and material for the construction of the buildings, and knew, or had reasonable ground to believe, that Arp was procuring the material on credit; that Arp proceeded with the construction in substantial compliance with the terms of the contract until about September 15th, when he practically abandoned the contract, and, after that time, the work proceeded slowly until in November, when he entirely abandoned the contract, without having finished all the houses; that, about November 14th, and again on December 1, 1913, Schlappi notified Arp to proceed to complete the buildings, or that he (Schlappi) would proceed to complete the buildings; that Schlappi did thereafter employ another contractor, and Schlappi paid such contractor $3,178.01 for said work; and that such expenditures were reasonable and necessary; that, when Arp abandoned the contract, Schlappi had a balance of $2,300 of the contract price on hand, with which to complete the buildings, and that it cost the owner the additional sum afore-

said, or $878.01 more than the balance to be paid under the contract. As to the claim of Arp against Schlappi, the referee found that Arp was not entitled to extras, and that, because of payments by Schlappi to him, Arp was not entitled to recover anything from Schlappi; that the lumber company filed its claim with the clerk and notified Schlappi, as alleged; that the material was delivered on the respective premises, as alleged; that the duplications were made by mistake, and were not fraudulent, and the amount was deducted from the claim of the lumber company; that the date of furnishing the last item of material under the contract of May 12, was October 31, 1913, and that the fair, reasonable market value of the material so delivered under that contract was $4,370.10, and that thereon Schlappi paid to the lumber company $1,500, September 8, 1913, leaving a balance under the contract of $2,870.10; that the last item under the contract of June 11th was as before stated, and the value of the material delivered thereunder is $1,665.78, and that said two balances or sums are due the lumber company. As to the knowledge of Schlappi, it was found that he knew that the lumber company was delivering the lumber and material when they commenced making delivery to the buildings, and that defendant admitted in his testimony that, so far as he knew, Arp purchased all the material for the buildings from the lumber company; that, about August 23, 1913, he heard rumors with reference to the financial standing of Arp, and that, on that date, he had a conversation with the manager of the lumber company, and Mr. Schlappi was then advised that Arp had paid nothing to the lumber company; that a statement of said account was furnished to Schlappi about September 1, 1913; that, at the time said account was rendered, Schlappi had paid to Arp, upon his contract, the sum of $8,500, leaving a balance due on said contract at that time of $5,950; that thereafter, Schlappi made the following payments upon the contract:

September 6th, $1,500 to lumber company; September 6th, $500 to brick and tile company; September 13th, $400 for labor; September 15th, $300 to Haakinson & Beatty; September 15th, $50 to brick mason; September 15th, $50 to brick mason; October 4th, $250 for labor; October 18th, $500 to brick and tile company. That, after September 1st, the lumber company took to the house on one lot, material amounting to $940.05, and to another of the houses in the sum of $662.78, or a total of $1,602.83. It was further found that Schlappi was required to expend the sum before stated, to complete the buildings. The contract between Arp and Schlappi provided that the houses were to be completed by September 1, 1913, and it was found that one of the houses was not completed until February, 1914, and that the rental value of that house from September 1, 1913, to March 1, 1914, was $90 a month.

The amount of Hansen's claim, as found by the referee, is $166.99, with interest, and the amount of the claim of Comoli is $120. These are junior lien holders, and the stipulation in reference thereto has before been referred to. The evidence sustains the findings of the referee and the trial court. It would serve no useful purpose to set out the evidence of the different witnesses, and conflicting statements. On such findings of fact, the law question is as to whether thereunder the owner had the right to make payments to the principal contractor, in accordance with the terms of his contract, or whether the materialman is entitled to a lien, where the owner has knowledge that the materials were furnished on credit, or has knowledge of such circumstances as to put him upon inquiry, and where the payments are not made strictly according to the terms of the contract. This we conceive to be the real point of difference between the counsel on either side. Appellant contends that the case comes within the rule of a line of cases such as *Stewart & Hayden v. Wright,* 52 Iowa 335, and they

cite that case and other similar later cases. An earlier case is cited by appellant, *Kilbourne, J. & Co. v. Jennings & Co.*, 38 Iowa 533, to the point that the contract between the owner and contractor is binding, and that the owner is not liable beyond the terms of his contract. But the point in that case was whether the owner could be compelled to pay in money when he had agreed to pay in property. In the *Stewart* case, supra, there was evidence to support the defendant's answer, which alleged that she had no notice or knowledge of any arrangements made by the principal contractor for labor or materials, and that, under the contract, the principal contractor proceeded with the construction of the house; and while the same was in course of construction, she (the owner), in good faith, and without any notice or knowledge that the principal contractor had incurred or was incurring debts for materials or labor, and without any knowledge of the claims of the plaintiff, and before any notices were served upon her, paid to the principal contractor installments, as the work progressed, and in compliance with the contract. It was held that, under such circumstances, the payments protected the owner. Appellant also cites *Epeneter v. Montgomery County*, 98 Iowa 159; *Fullerton Lbr. Co. v. Osborn*, 72 Iowa 472, 475; *Page & Son v. Grant*, 127 Iowa 249; *Iowa Stone Co. v. Crissman*, 112 Iowa 122; *Slagle & Co. v. De Gooyer*, 115 Iowa 401; *Chicago Lbr. & C. Co. v. Garmer*, 132 Iowa 282; *Jones & M. Lbr. Co. v. Murphy*, 64 Iowa 165; and other cases. The *Jones v. Murphy* case, supra, is also cited by appellees. We shall not again review these cases. Some of them are reviewed in *Cedar Rapids S. & D. Co. v. Heinbaugh*, 183 Iowa 1236. We may say, however, that some of these cases seem to be against appellant's contention. In *Page v. Grant*, supra, it was held that the owner is not always justified in paying the principal contractor, even in strict accordance with the contract, and that, by failing to observe his original contract as

to the time of payment, or to follow the law as to the rights of subcontractors, he may be liable for more than the original contract price.    And in *Chicago Lbr. Co. v. Garmer,* supra, payments were made in accordance with the terms of the contract, but the owner had knowledge that the materialman was furnishing material, and the court said that, if the owner was aware of this, the law seems to be well settled that payment to the contractor will not constitute a defense.    These last two cases are discussed in the *Cedar Rapids S. & D. Co.* case.

On the other hand, appellees rely on a line of cases commencing with *Winter & Co. v. Hudson,* 54 Iowa 336, where, as here, the statement and notice were given to the owner within the time required by law; payments were not made in strict accordance with the terms of the contract, nor were the buildings completed within the contract time; the defendant had knowledge that the materials had been furnished and used in the construction of the buildings; and it was held that the owner was liable to the subcontractor, though full payment had been made to the principal contractor.    The *Stewart & Hayden* case was referred to, and the distinction pointed out.    Appellees cite, also, *Gilchrist v. Anderson,* 59 Iowa 274.    In that case, the facts are, we think, more favorable to appellant than are the facts in the instant case; for that, though the owner knew the contractor had to buy the lumber of someone, he did not know that he bought it from the defendant.    In that case, the owner did not know that the contractor bought on credit of anyone until near the expiration of 30 days from the time the last lumber was furnished, when written notice was served. It was held that that case fell more nearly under the rule of *Winter v. Hudson,* supra, and it was said:

"The test question is as to whether Anderson [the owner] could probably, in the exercise of reasonable diligence,

have discovered that the plaintiffs were entitled to a lien. We have to say that it appears to us that he could."

It was held that he should have pursued the inquiry suggested, and that the subcontractor was entitled to a lien. In the instant case, appellant knew that appellees had the right, under the law, to perfect their lien by complying with the statute, which they did in due time. Without further discussion, we think the instant case comes within the rule of the cases cited by appellees, before referred to, and the following: *Fay & Co. v. Orison,* 60 Iowa 136; *Andrews v. Burdick,* 62 Iowa 714; *Jones v. Murphy,* supra; *Othmer Bros. v. Clifton,* 69 Iowa 656; *Hug v. Hintrager,* 80 Iowa 359, 360; *Green Bay Lbr. Co. v. Adams,* 107 Iowa 672; *Page v. Grant,* supra; *Chicago Lbr. Co. v. Garmer,* supra; *Wheeler v. White,* 164 Iowa 495; *Cedar Rapids S. & D. Co. v. Heinbaugh,* supra.

2. A constitutional question is argued by appellant. Code Section 3093 was amended, or rather repealed, and a new section enacted in lieu thereof, which new statute went into effect July 4, 1913, about two months after the contract between Schlappi and Arp was made, and after the lumber company started to deliver material. It is argued by appellant that the new statute does not govern this case, and they cite certain provisions of the Federal and state Constitutions, and a number of cases are cited. The new statute seems to make the owner liable for any payments made to the original contractor before the lapse of the 30 days allowed by law, for the filing of subcontractors' mechanics' liens. It is stated by appellant, in argument, that no question was raised in the trial court but that this case was governed by the law as it stood under the prior statute. We do not find that the constitutional question was raised by either party in the court below. This being so, it may not be raised in civil

2. APPEAL AND ERROR: reservation of grounds: constitutional questions not raised below.

cases for the first time here. *State v. Ross*, 186 Iowa 802. Furthermore, we do not understand appellee to contend otherwise. All they say in argument on this point is in the reply argument, where they say that an examination of appellant's case shows that, so far as the extent of the lien is concerned, the new act did not change the law as it previously existed, and that changes in the new law were administrative in their character, and deferred the time when action might be begun for the debt. We have decided the case without regard to the new statute, and we do not decide anything in regard to the new statute.

The judgment and decree of the district court is affirmed, and the liens of the subcontractors will be established in accordance with the stipulation. There was a motion filed by appellant to strike the amended abstract, and also a motion to strike appellees' argument and parts of the reply argument. These motions are overruled.—*Affirmed*.

LADD, C. J., EVANS and SALINGER, JJ., concur.