DES MOINES FURNACE & STOVE REPAIR COMPANY, appellant, v. LEROY LEMON, formerly doing business as EASTOWN HEATING & AIR CONDITIONING COMPANY, et al., appellees (two cases).

Nos. 48109
48110.

(Reported in 56 N.W.2d 923)

FEBRUARY 10, 1953.

Neiman & Neiman, of Des Moines, for appellant.

Holliday & Myers and R. W. Brennan, all of Des Moines, for appellees.

THOMPSON, J.—These cases were tried separately in the lower court, and separate records are filed here. However, the issues, plaintiff and counsel are the same in each case, and they have been combined in this court for the purpose of argument and submission.

Leroy Lemon, doing business as Eastown Heating and Air Conditioning Company, is a nominal defendant in each case. In

one case Mrs. Helen Mercer, and in the other Nellie Hudson and Oral Hudson, who are wife and husband, are the only defendants who appeared and contested, and the issues involve them alone. The trial court found in favor of the defendants in each action, and entered decree and judgment dismissing plaintiff's petitions. The appeals are argued together and will be so determined.

There is little dispute in the facts. Leroy Lemon was in 1950 engaged in the heating and air conditioning business in Des Moines. Mrs. Mercer and the Hudsons, hereinafter known as the defendants, separately contracted with Lemon for the installation of furnaces in their homes. The furnaces were furnished by the plaintiff, were duly installed, and payment was promptly made to Lemon by the defendants. Lemon did not pay the plaintiff for the material furnished, and within the prescribed time claims for mechanic's liens were filed by it against the properties of the defendants in which the furnaces had been installed. No question is raised as to the time of filing, the form of the lien claims or the reasonableness of the charges.

The defendants support the decisions of the trial court by these contentions: (1) That there was no such relation between Lemon and defendants as to make him their agent or to bring him within any other of the classes defined in section 572.2, Code of 1950, and so there was no contract between plaintiff and defendants; (2) the relation between plaintiff and Lemon in each case was that of creditor and debtor and the sales to Lemon were on open account and in reliance solely upon his credit, and (3) defendants had no knowledge that plaintiff was furnishing materials to Lemon for the installation of furnaces in their properties, and such knowledge was essential to plaintiff's recovery against them. We shall discuss these in order, but since we think the first and second contentions are much related they will be combined in our consideration.

I. Section 572.2, supra, so far as material is set out herewith: "Every person who shall furnish any material * * * for * * * any building or land for improvement, alteration, or repair thereof * * * by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on

which the same is situated * * *, to secure payment for material * * * furnished."

The question to be determined here is whether or not the plaintiff was a subcontractor under Lemon so as to bring it within the meaning of the statute above quoted. That Lemon was the principal contractor with defendants is not open to question. That plaintiff furnished the material for the furnaces installed likewise admits of no doubt. But defendants say that plaintiff dealt with Lemon upon open account, and relied solely upon his credit. If this is so, no mechanic's lien is available to it. The facts, however, do not support this position, and for that reason we do not refer at length to the authorities cited by defendants which hold that material must be furnished for a particular job in reliance upon the security of the lien claim against the improvement and not upon the general credit of the contractor if a subcontractor is to preserve his mechanic's lien rights. The record here shows that when Lemon applied for credit with the plaintiff, after some investigation he was told it would furnish him material for two jobs at a time, provided he gave "the name of the job that the material was to go to each time he made a purchase." This procedure was quite evidently followed in each of the two cases before us. The material was delivered by plaintiff to the particular job as ordered by Lemon, and was charged to such job upon the plaintiff's books by the name of the defendant-owner and the street number of the property. It is the usual custom followed in such cases by a subcontractor supplying materials to a principal contractor, and clearly shows plaintiff's intent to rely upon its status as a subcontractor within the meaning of section 572.2, supra. Defendants' authorities holding that an agency may not be created except by express or implied contract with the principal (Popejoy v. Eastburn, 241 Iowa 747, 41 N.W.2d 764, and others) and cases holding that one who furnishes materials or labor in reliance upon the general credit of the contractor-in-chief and upon open account (Western Electric Co. v. Iowa Falls Electric Co., 196 Iowa 19, 193 N.W. 556, and others) waives his lien rights, are not factually in point, and we shall not take the space required to analyze them. The rights of the plaintiff are determined by the statute above referred to. It was clearly a subcontractor within the meaning of section 572.2. It

furnished materials for the improvements upon defendants' properties by virtue of a contract with the defendants' (the owners') contractor. It is not a question here of whether an agency existed, but of statutory rights. To hold otherwise would destroy the plain meaning of the mechanic's lien law so far as it governs the rights of subcontractors.

The plaintiff pleaded that the sum total of the two liens as filed against the Hudsons and Mercer exceeded the amount due it on these jobs by $173.80, and it was unable to determine to which account the credit should be given. Defendants think this shows plaintiff was dealing with Lemon on open account and was relying upon his credit rather than upon the security afforded by the mechanic's lien laws. It is not clear from the record how this extra credit arose, but for the reasons set out above we think it apparent plaintiff relied upon the lien statutes. The record shows that plaintiff kept a separate account for each job. When Lemon brought in a payment he directed where it was to be applied. If he failed to so direct it was applied to the oldest account.

A lien right is not defeated because the claimant relied upon the credit of the principal contractor as well as upon the building. 57 C. J. S., Mechanics' Liens, section 46, page 538; Peerless Pacific Co. v. Rogers, 81 Or. 51, 158 P. 271; Smith v. Hopper, 67 Wash. 224, 121 P. 77; Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 111 P.2d 267.

II. Defendants further urge that they had no knowledge plaintiff was furnishing materials for the improvement of their premises, and without such knowledge they were justified in making full payment to Lemon, and plaintiff can therefore not prevail in these actions. They cite many cases which support their theory in greater or lesser degree. Mason City Brick & Tile Co. v. Lamson, 190 Iowa 365, 180 N.W. 314; Orcutt Co. v. Schlappi, 188 Iowa 378, 174 N.W. 403; Nancolas & Howard v. Hitaffer & Prouty, 136 Iowa 341, 112 N.W. 382, 12 L. R. A., N. S., 864; Iowa Stone Co. v. Crissman, 112 Iowa 122, 83 N.W. 794; and Epeneter v. Montgomery County, 98 Iowa 159, 67 N.W. 93. Some of these cases hold that the owner had the right to settle with the principal contractor in strict accordance with the terms of his contract, and that if he did so he was not vulnerable to a

claim for a subcontractor's lien. But, however the law may have been at that time, it was obviously provided by later statutes that if the lien claim were filed within the time required the owner might settle with the chief contractor before the expiration of such time only at his peril; and this without regard to whether he had knowledge of the existence of the subcontractor. Prior to the enactment of chapter 267, Acts of the Thirty-fifth General Assembly, a subcontractor was required to give notice to the owner of the filing of his lien. See section 3093, Code of 1897. But chapter 267, supra, appearing as section 3093, Supplement of 1913, and effective on July 4, 1913, did away with the necessity for notice. It gave the subcontractor thirty days to file his lien, and protected the owner by providing he should not be obligated to pay the principal contractor during that period unless an indemnifying bond was furnished. It said, in part:

"Should the owner pay to the original contractor any part of the contract price of such building, structure or improvement before the lapse of the thirty days allowed by law for the filing of subcontractor's mechanics' liens, he will still be liable to said subcontractor for the full value of any material, machinery or fixtures furnished, or labor performed upon said building, structure or improvement, provided said subcontractor file his mechanics' lien within the time provided by law for the filing of subcontractor's mechanics' liens."

Chapter 380, Thirty-eighth General Assembly, later section 10278 of the Code of 1924, extended the time for filing subcontractor's lien claims to sixty days. The Fortieth Extra General Assembly (Unpublished Acts), by House File 212, section 23 (section 10283, Code of 1924), made the intent of the legislative body still clearer. It enacted the law substantially as it now appears as section 572.14, Code of 1950, which we set out:

"Payment to the original contractor by the owner of any part or all of the contract price of such building, or improvement before the lapse of the sixty days allowed by law for the filing of a mechanic's lien by a subcontractor, will not relieve the owner from liability to the subcontractor for the full value of any material furnished or labor performed upon said building, land, or

improvement if the subcontractor file his lien within the time provided by law for the filing of the same."

There is no intimation here that knowledge of the owner that material or labor is being furnished by a subcontractor is material to his liability. He is specifically protected by the present section 572.13, Code of 1950, against any liability to pay the principal contractor during the sixty days allowed for the filing of subcontractor's lien claims, unless receipts are produced or a bond is furnished; and, by section 572.14, supra, it is made as clear as language can be devised that he pays during that period at his peril.

These material and highly important changes in the statutes have all been enacted since the decision of the authorities relied upon by defendants at this point. It appears that in both Mason City Brick & Tile Co. v. Lamson, supra, and Orcutt Co. v. Schlappi, supra, chapter 267, Acts of the Thirty-fifth General Assembly, supra, had gone into effect after the original contract was made, but before the trial of the actions. The court decided each case under the previous statute. But in Orcutt Co. v. Schlappi, we said, page 388 of 188 Iowa, page 407 of 174 N.W.: "The new statute seems to make the owner liable for any payments made to the original contractor before the lapse of the 30 days allowed by law, for the filing of subcontractors' mechanics' liens."

In Mason City Brick & Tile Company case, page 369 of 190 Iowa, page 316 of 180 N.W., is this: "The new statute will not protect against the subcontractor if payment is made to the principal contractor before said 30 days have lapsed."

Section 572.1, Code of 1950, defines the term "subcontractor" as including "every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts therefor directly with the owner, his agent, or trustee."

In 57 C. J. S., Mechanics' Liens, section 97, page 607, this rule is laid down: "The right to a mechanic's lien is not confined to persons contracting directly with the owner * * * or furnishing material *with the actual knowledge of the owner*, but extends to persons who do work and furnish materials under a

contract with, or employment by, the contractor." (Italics ours.) This was followed and quoted with approval in Morin Lumber Co. v. Person, 110 Mont. 114, 99 P.2d 206.

In the recent case of Denniston & Partridge Co. v. Romp, 244 Iowa 204, 212, 56 N.W.2d 601, 606, we said: "Nor was it essential that she [the principal defendant] know with whom her lessees dealt in procuring the material for the improvements which her agreement with them required."

In a similar situation the Oregon Supreme Court said: "It is no doubt true that Mr. Rogers knew nothing about the plaintiff furnishing the material. This, however, would not change the matter." Peerless Pacific Co. v. Rogers, supra, at page 54 of 81 Or., page 272 of 158 P.

There is nothing in section 572.14 which indicates the legislature had any intent to make it nonapplicable unless the owner had knowledge of the furnishing of material or labor by a subcontractor. Such a construction would to a great extent nullify the mechanic's lien law in so far as it furnishes protection to a subcontractor. This thought is fortified by the omission of the requirement for notice of the filing of the lien within the designated period, now sixty days, which was formerly mandatory, but was eliminated when chapter 267, Acts of the Thirty-fifth General Assembly, supra, was enacted. Without doubt, the law now protects the owner by the provision in section 572.13, that he is under no obligation to settle with his contractor within the period allowed for filing subcontractor's liens; and its intent is further made clear by the following section, 572.14, supra, which says that payment to the principal contractor within such period will not relieve the owner from liability to the subcontractor for the full value of material furnished or labor performed if his lien is filed within sixty days. The owner must take notice that there may be subcontractors, and he may not pay the contractor within the period prescribed without taking the risk that subcontractors' liens may be filed which will entail liability upon him. It is regrettable that in the cases under consideration the owners must pay twice, but this misfortune could have been avoided by following the plain wording of the mechanic's lien statutes.

III. It avails nothing to the defendants to urge that Lemon was an "independent" contractor. The term means nothing here.

The facts show he was a contractor within the meaning of the statutes. There is testimony in the Hudson case from the witness Millhouse, a former salesman for Lemon, that there was a furnace identical with the ones delivered to the defendants sitting in Lemon's office or display room. This is not material, nor is there any evidence that the Hudsons or Mrs. Mercer knew of it, or that they relied upon it as showing they thought they were buying something Lemon actually owned. In fact, James Mercer, husband of Helen Mercer, and apparently her agent in handling the transaction with Lemon, as a witness for her said: "Nothing was told to me about the furnace at all, where it was coming from or anything." See Peerless Pacific Co. v. Rogers, supra.

IV. The trial court's decree granted plaintiff judgment against Lemon for the full amount due on each of the Mercer and Hudson jobs. Mrs. Mercer cross-petitioned against Lemon, asking that if she were compelled to pay plaintiff's lien claim, she have judgment over for such amount as might be established against her. She is entitled to judgment against Lemon for the amount of plaintiff's lien hereby established against her real estate.

Defendants Hudson did not cross-petition. But they are entitled to subrogation of plaintiff's judgment against Lemon, when they have satisfied its lien. Subrogation effects an assignment by operation of law under such circumstances. It amounts to an equitable assignment. 50 Am. Jur., Subrogation, section 4, pages 680, 681. When defendants Hudson have paid and satisfied plaintiff's lien against their property, plaintiff shall forthwith execute an assignment to them of its judgment against Lemon, and the decree to be entered in the trial court shall so direct.

V. One or both of the defendants must be entitled to the application of the credit referred to in Division I. The trial court did not decide it because it was not material in its view of the matter, and the record does not contain a sufficient showing to enable us to allocate it. Both cases must be reversed, and remanded for the purpose of determining the application of the credit of $173.80, and for decree in accordance with this opinion. —Reversed and remanded.

All JUSTICES concur except LARSON, J., not sitting.