THEODORE STEINKE, T. P. DAVIS *et al.*, Appellants, v. J. C.
YETZER *et al.*

**Trusts:** POWER OF TRUSTEE. A bank, being in urgent need of its resources to prevent a panic, its president, a large debtor, deeded to the bank certain land, the deed reciting that it was to secure all the depositors, and to be wholly and fully used to pay all debts of the bank, and he informed the public of the conveyance. *Held*, that the deed created a power in the trustee, in its discretion, to sell or mortgage the land, in whole or in part.

INFORMAL EXECUTION. The bank having quitclaimed the property to a third person, who executed mortgages thereon, and reconveyed the title to the bank, subject to the mortgages, its quitclaiming as owner, and not as trustee, was an informality which did not deprive the mortgagees of their rights to a lien.

SAME: *Intent to execute.* The bank having secured the proceeds of the mortgages, and applied them to its business, the depositors receiving the benefit, and, the title being restored to the bank subject to the mortgages, this showed an intention to execute the trust in part, though this was not revealed by the conveyanes themselves.

RATIFICATION Any informality in the proceedings was ratified by the bank's keeping the money. and the depositors, since they claimed through the bank, had only its rights, and could not take advantage of the informality.

DEPOSITORS: *Mortgagees.* Conceding the depositors did not receive the benefit of the loans, the bank, as trustee, being empowered to create the liens, the mortgagees should be protected.

AUTHORITY OF BANK OFFICERS. Where the management of a bank's affairs is intrusted to the president and cashier, and they, with knowledge of the directors, have conveyed land at various times, a conveyance by them is not invalid because not authorized by the directors.

**Preference of Creditor:** DEBTS OF BANK One owning nearly one-half the stock of a bank, and being largely indebted to it, conveyed land to the bank in trust for the depositors. *Held*, that he had a legal right to prefer creditors of the bank over his own creditors and the doctrine applicable to partnerships, that individual assets should first be used to pay individual debts, did not apply.

*Appeal from Cass District Court.*—HON. N. W. MACY, Judge.

MONDAY, MAY 22, 1899.

THIS case, as we have it, is a consolidation of a number of actions, which were separately brought, but united and tried together 'in the district court. We shall state the facts as briefly as possible, out of which the controversy arose, so that the issues presented may be fully understood. The Cass County Bank was an incorporation engaged, as its name would indicate, in the banking business. J. C. Yetzer was its president, Isaac Dickerson vice president, and A. W. Dickerson cashier. On August 7, 1893, the bank was insolvent, though its condition was not known, outside of its officers and directors. The financial panic then prevailing aroused fears on the part of depositors, and, to restore confidence, and prevent a speedy collapse of the institution, Yetzer on that day, his wife joining, made a deed to the bank of some one thousand five hundred acres of land and three town lots in Atlantic. This deed recited that it was made "for the purpose of securing all the depositors of the grantee, the Cass County Bank, and to be used for the purpose of paying all debts of the said Cass County Bank." Through Yetzer the public was informed of this conveyance. On November 17, 1893, the Cass County Bank, needing money to pay its debts and conduct its business, quitclaimed in three several instruments this real estate to Yetzer, who mortgaged part of it to the Security Loan & Trust Company to secure a loan of ten thousand dollars, a part to E. Huchendorf to secure a loan of six thousand dollars, and still another portion to Mrs. A. B. Crombie for two thousand dollars. Two of these deeds were executed in the name of the bank by J. C. Yetzer, president, and A. W. Dickerson, cashier, and the other, covering the land mortgaged to Huchendorf, by the vice president and cashier. All of this money was received and used by the Cass County Bank. Thereafter Yetzer and his wife deeded the land back to the bank, subject to these

mortgages. In December, 1893, the bank failed, and was placed in the hands of a receiver. Some time later the Cass County Bank was removed as trustee under the Yetzer deed by proper order of court, and the plaintiff Steinke appointed in its stead. The plaintiffs were depositors in the bank at the time of its failure, and they bring this action, asking that the real estate so conveyed by Yetzer be sold, and the proceeds applied ratably in payment of their debts. The Security Loan & Trust Company, E. Huchendorf, and F. H. Crombie, executor of the estate of A. C. Crombie, deceased, set up their respective mortgages as first liens on the property included therein, and by cross bills seek to foreclose the same. W. H. and W. J. Applegate were also made defendants in the action by Steinke, and by answer and cross bill they set up the fact that they are each judgment creditors of Yetzer; the judgment in favor of W. H. Applegate having been rendered in November, 1894, and that in favor of W. J. Applegate in May, 1897. They claim a prior right in said real estate, to the extent of their liens, as against all parties. Some further facts will be stated in the course of the opinion. The district court established the mortgages respectively, as first liens on the real estate in each described, and, subject thereto, confirmed the title of Steinke as trustee in all the land, and authorized him to sell the same for the benefit of depositors and creditors of the bank. Plaintiffs and W. H. and W. J. Applegate appeal.—*Affirmed.*

*J. B. Rockafellow* and *Willard & Willard* for Steinke and others.

*Curtis, Follett & Curtis* for W. H. and W. J. Applegate.

*Phelps & Temple* and *Carroll Wright* for Security Loan & Trust Company.

*John W. Scott* for F. H. Crombie and E. Huchendorf.

WATERMAN, J.—The main controversy pertains to the meaning to be given the trust clause in the deed from Yetzer and wife to the bank. It is insisted on the part of plaintiffs that no power of sale was given the bank, and that, even if such could be implied, 'it would not include the power to mortgage. The expressed object of the conveyance was "for the purpose of securing all of the depositors of the Cass County Bank, and to be wholly and fully used for the purpose of paying all the debts of the said Cass County Bank." When all of the circumstances are considered, the relation and situation of the parties, and that Yetzer made known to the public the fact of this conveyance, it seems impossible to resist the conclusion that he intended to vest in the trustee the power to execute the trust. No particular form of words is necessary to create a power to sell. Such power exists whenever it is apparent that it is necessary to carry out the purpose of the grantor. Perry on Trusts, section 766; Beach on Trusts, section 467. And we may say that a power to mortgage is sometimes implied in a power to sell. *Waterman v. Baldwin,* 68 Iowa, 255; *Pike v. Baldwin,* 68 Iowa, 263; *Loebenthal v. Raleigh,* 36 N. J. Eq. 169. But, in our opinion, the right expressly given in this case "to wholly and fully use" this property for the purpose mentioned is an expressed gift of the power to sell or mortgage, as the trustee might see fit. The trust here was coupled with an interest. Yetzer was a large debtor to the bank. The bank needed all of its resources at its immediate command to enable it to continue business. These considerations must be borne in mind when we attempt to construe what the grantors understood and intended the bank should do in the way of using this property. To say that it could only hold it subject to the claims of creditors is to deprive the word "use" of all significance whatever. See *Waterman v. Baldwin,* *supra,* in which the power included in the right "to dispose" of property is considered. It is said that the use made was but partial, and that, in any event, the bank must, if it used

the property at all, do so "wholly and fully." This is making these words a term of limitation. They should, in our opinion, be given just the opposite meaning. They are intended to take away any restriction on the trustee's right. It could use, and use to the fullest extent, the property, and the whole of it.

II.   It is contended that, if there was a right to sell or mortgage, it could be done only as trustee, and the deeds made by the bank to Yetzer to enable him to make the mortgages, were not executed by it in that capacity. If the effect of the whole transaction was to create a lien which the bank had authority to give, it would certainly be inequitable to hold that the mortgagees should lose their rights because of an informality in the proceeding. This covers the point also that the mortgages were not executed by the bank, but by Yetzer.

III.   Another ground of attack upon which plaintiffs rest is that the deeds to Yetzer were not authorized by the board of directors of the Cass County Bank. It is a fact that the matter was never brought up at any formal board meeting, for the board did not often meet. The management of the bank's affairs was instrusted to the president and cashier. These officers, with the knowledge of the directors, had so executed deeds of other real estate belonging to the bank before this time. It was the usual course of business as sanctioned or ratified by the directors. The deeds were therefore not invalid on this account. The bank is bound by the acts of these officers, done according to custom and usage; and third persons dealing with them under such circumstances, and having no knowledge of want of authority, are protected, even when authority is lacking. *Minor v. Bank,* 1 Pet. 46; *Mining Co. v. Anglo-Californian Bank,* 104 U. S. 192; *Foot v. Railroad Co.,* 32 Vt. 633; *Phillips v. Campbell* 43 N. Y. 271; *Whitaker v. Kilroy,* 70 Mich. 635 (38 N. W. Rep. 606).

IV.   It may be admitted that in these conveyances nothing is said to indicate that the transactions were had for the purpose of carrying out the trust.   But all the facts and circumstances show that this was the purpose of the parties. The bank was in sore need of money.   The sum of eighteen thousand dollars was raised by the mortgages.   The bank received it all.   Plaintiffs had their share of the benefits, for there is no evidence that the bank lost any part of it in business.   The title to the real estate was again placed in the trustee after the money was secured.   There can be no conclusion reached but that the intention was to execute, in part, the trust, and every principle of equity requires that we sustain what was done.   We may say further that if there was any informality of proceeding in these various transactions, the bank, by keeping the money received, has ratified what was done.   *Eadie v. Ashbaugh,* 44 Iowa, 519; *Goodnow v. Stryker,* 61 Iowa, 261; *Milligan v. Davis,* 49 Iowa, 126-129.   Appellants, claiming through the bank, have only its rights, for this is not a case where the act done by the trustee was something that it had no right to do under the power given.   The most that can be said is that the bank had no right to raise the money in the manner it did; that is, by deeding to Yetzer, and having him execute the mortgage, instead of making such instrument itself.   But this is matter of form only.   If the bank is not in situation to complain, we do not see how plaintiffs can do so.   Manifestly it would be unjust to give these appellants the land free and clear of incumbrance, and permit the bank to retain the money obtained on the mortgages also.

V.   If we were to admit that plaintiff received no benefit from the funds procured on the mortgages, still, as we have found the trustee had a right to create such liens, we should have to say that the mortgage creditors should be protected.   They were not obliged to see to the application of the money.   They did not and could not know the debts of the bank.   When they paid the money to the

trustee, their responsibility ceased. *Thomassen v. Van Wyngaarden,* 65 Iowa, 687; *Thompson v. Lambert,* 44 Iowa, 239; *Andrews v. Sparhawk,* 13 Pick. 393; *Norman v. Towne,* 130 Mass. 52; *Carrington v. Goddin,* 13 Grat. 587; *Conover v. Stothoff,* 38 N. J. Eq. 55.

VI.    As to the issue raised by defendants Applegate, it appears that their judgments were obtained after the trust deed to the bank was executed, and after these mortgages were made. Yetzer was largely in debt to the bank when the deed was made, and the bank was indebted to its depositors. Yetzer was the owner of nearly one-half the capital stock of the bank, and on this account was liable for its debts. The depositors were, in a sense, creditors of Yetzer. He had a legal right to prefer them as he did. This principle is too well established to need citation of authorities in its support. But counsel for the Applegates seek to take their case out of that rule by invoking the doctrine applicable to co-partnerships, that, when there are firm debts and assets and individual debts and individual assets, the latter shall be first used to pay the individual debts. This is not a case for the application of that rule. There is no co-partnership here. The Applegates were not creditors of the bank, but of Yetzer alone. We see no reason for giving them priority over the mortgages or the claims of the depositors. Our conclusion is that the decree of the trial court must be AFFIRMED.