W. O. JOHNSON & SONS, v. THE DES MOINES, IOWA FALLS & NORTHERN R'Y. CO., *et al.,* Appellants.

**Railroads:** EXECUTION   OF   CONTRACTS:   AUTHORITY   OF   OFFICERS.
1  Where the by-laws of a construction company gave to its president general supervision of its business and he was actually in charge of its work, his act in executing company contracts, with knowledge and acquiescence of the directors and the company, was binding although not specially authorized.

**Construction of railroads:** ENFORCEMENT OF SUBCONTRACTOR'S LIEN.
2  Where a subcontractor completes his work in accordance with the direction of the chief engineer of the road, who has the authority to direct the work and approve of the same, he is entitled to his compensation, upon certification by the engineer that the work has been performed, although the road bed is not completed in accordance with the original contract of construction.

**Subcontractor's lien:** ENFORCEMENT. Where a railway company
3  was indebted to the contractor in excess of a subcontractor's claim at the time the latter instituted suit to enforce his lien, the questions of service of the thirty day notice or whether any thing was then due from the company were immaterial.

*Appeal from Story District Court.*— HON. J. H. RICHARD, Judge.

WEDNESDAY, JANUARY 10, 1906.

ACTION for services rendered and the enforcement of a mechanic's lien. Decree was entered as prayed. The defendants appeal.— *Affirmed.*

*Albrook & Lundy,* for appellants.

*Dawley, Hubbard & Wheeler,* for appellee.

LADD, J.— In 1901 the Des Moines, Iowa Falls & Northern Railway Company entered into an agreement with the Globe Construction Company, by the terms of which the latter undertook to construct and equip a line of railway for the former from Iowa Falls to Des Moines, a distance of seventy miles. The construction company sublet the clearing of the right of way and preparation of the " roadbed, for the reception of ties and rails," to the plaintiff, W. O. Johnson & Sons, who began work in June, 1901, and later were fully paid for all done during that year. On March 26, 1902, the parties indorsed on the contract a further agreement that it " remain in full force for the completion of the entire line as it has been or may be adopted "

by the railroad company and accepted by the construction company, but with this modification, that the compensation with respect to several items should be increased.    Late in the season it became evident that the work could not be performed according to the specifications and profile in time to lay the ties and track, so as to enable the railway company to run its trains into the city of Des Moines prior to December 31, 1902, which was necessary in order to avoid the forfeiture of certain taxes which had been voted in aid of construction.    For this reason, the ties and rails for the last ten miles were laid by the construction company before the grading had been completed according to the profile, and the company's first train passed over the entire line December 29, 1902.    The evidence shows, however, that the work undertaken by plaintiff had been done precisely as directed by the chief engineer, and in accordnace with the plans adopted by him to enable the railway company to make this initial trip, and he executed final certificates of the amount due for the work performed, together with 10 per cent. of previous estimates retained in pursuance of the terms of the contract.    The construction company declined to pay on the ground that the work had not been completed, and this action was begun to recover the same, and to establish a mechanic's lien against the railroad.

I.    Appellant's first contention is that the agreement of March 26, 1902, indorsed on the contract, was unauthorized by the construction company.    L. Soule was its president, and, as such, attached its name to the original contract by himself as president, and also to the subsequent agreement indorsed thereon.    He was not expressly authorized to execute either; but at a meeting of the stockholders in April, 1902, at which the directors were present, or shortly thereafter, they were informed of the agreement of March 26th, and, though one of them may have suggested that it might have been well to have brought it to their attention before

1. RAILROADS: execution of contracts: authority of officers.

signing, no other objection was made, and thereafter the plaintiff was allowed to perform the work thereunder. The work was done under Soule's special supervision until August 11, 1902, and thereafter under him through the chief engineer. ·

The by-laws of the company declare that its affairs " shall be managed by the board of five directors," and that among the officers are a president and a general manager. The president, among other things, is given general supervision of the company, and the by-laws further provide that " the general manager shall be the executive officer of the company, under the direction of the board of directors. He shall have immediate charge of all of the business affairs of the company." The record does not indicate whether a general manager had been elected, but it does show that Soule was actually " in charge of the business affairs of the company," whose object was to " build and equip steam and electric railroads   .   .   .   and to do a general contracting business." He had executed similar contracts before. We think that, in view of his practice of executing such ‚ contracts for the company, the fact that this one was done with the knowledge of the directors who raised no objection,· though advised that the work was being done thereunder, in connection with the broad powers conferred by the by-laws, and the acquiescence of the company in his interpretation of the by-law as conferring upon him such power, the company ought not to be permitted to question his authority in its behalf to execute the agreement, and that it is bound thereby. See *Steinke v. Yetzer,* 108 Iowa, 512; *Lull v. Anamosa Nat. Bank,* 110 Iowa, 537.

II. As said, the road was not prepared by plaintiff

2. CONSTRUCTION OF RAILROADS: enforcement of subcontractor's lien.

according to the original specifications and profile attached to the contract, and, for this reason, appellants insist that there should be no recovery, and that the construction company should be allowed on its counterclaim the amount paid out

to so prepare the road the following year in excess of what this would have cost had plaintiff done the work. These issues necessarily depend upon whether plaintiff fulfilled the terms of the contract. The construction company had the right to suspend the work at any time. It did so·in 1901, and paid all estimates of the engineer, including the 10 per cent. retained. In effect, the plaintiff's work was suspended in 1902; for, according to the evidence, the grading could not well be prosecuted while the track was being laid the last ten miles with a view of the immediate running of trains, and, according to the undisputed evidence, laying of rails and taking possession by the company is regarded ·in railroad, building as a termination of grading contracts. The construction company had decided that "rails be laid to Des Moines as fast as possible, regardless of the grade being finished." To accomplish this, the chief engineer changed his plans, and the work of plaintiff was per-·formed precisely as he directed. If it was placed on the natural surface in places or outside of the right of way, in one instance to avoid a pond of water, this was no fault of plaintiff.

The contract provided that "said work shall, .in all particulars, be made to conform to the plans, specifications, and directions of the chief engineer and the engineer in charge of the work, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and who shall have full power to reject and condemn all work or material which, in his opinion, do not conform to the spirit of this agreement, and shall decide every question which may or can arise between the parties, relative to the execution thereof and his decisions shall be conclusive and binding upon both parties hereto." Manifestly this conferred upon the chief engineer the authority to dictate the manner and extent of the work plaintiff was to perform, and, though the agreement between the railway company and the con-

struction company did not permit of such change, it is enough that the contract with the plaintiff expressly required compliance with the plans and directions of the chief engineer, and when these were fully met the task undertaken by plaintiff was completed. This was the view entertained by the engineer by whom all disputes were to be decided; for, when the rails were laid, January 1, 1902, he executed final estimates of the amount due Johnson & Sons, for the work done in December, and included therein 10 per cent. of previous estimates retained, and he testified that in doing so he intended them for those exacted by the contract upon the completion of the work. The company, though advised of the purpose of these estimates, declined payment. But it had stipulated in the contract that, " upon certificates of the chief engineer that the work contemplated to be done under this contract has been fully completed by the party of the first part, they will pay said party of the first part for the performance of the same." Further, 10 per cent. of the monthly estimates were to be retained by the company " until the final completion of the work embraced in this contract, when all sums due the party of the first part shall be fully paid and the contract considered canceled." So that the certificates, though not asserting in so many words the completion of the contract, plainly indicated, when construed in connection therewith that in the opinion of the engineer, it had been completed. *Flynn v. Railway,* 63 Iowa, 490, is directly in point. As everything done was in aid and promotion of the original plans, and the railroad has been completed in accordance therewith, the company is not in a situation to complain. Our conclusion is that as between the parties the contract must be regarded as performed, and that plaintiff is entitled to recover the amount certified by the chief engineer to be due.

Some question is raised concerning the serving of notice of plaintiff's claim on the railway company, whether this was done within 30 days after the completion of work,

and whether anything was then due from the railroad com-

**3. SUBCONTRAC- TOR'S LIEN: en- forcement.** pany. None of these inquiries are material, for the companies were fully informed of the nature of plaintiff's claim and lien by the commencement of the action, at which time the railroad company was indebted to the construction company many times the amount of plaintiff's claim.

The decree was right, and is *affirmed.*

WEAVER, J., took no part.