CEDAR RAPIDS SASH & DOOR COMPANY, Appellant, v. A. B. HEINBAUGH et al., Appellees.

MECHANICS' LIEN: Subcontractor's Failure to File Claim within 30 Days. Failure of the subcontractor to file his claim for a lien within 30 days following the furnishing of the last item of labor or material, opens the door to *unrestricted* settlement between the owner and principal contractor, irrespective of the owner's prior knowledge that the subcontractor had not been paid,—a door which remains open until closed by the filing of a claim, with written notice thereof to the owner. If, in the meantime, and after said 30 days, the owner has settled with the principal contractor, then the belated filing by the subcontractor is futile. (Sec. 3093, Code Supp., 1913; Sec. 3094, Code Suppl. Supp., 1915.)

MECHANICS' LIEN: Non-Permissive Payments. The fact that, during the progress of an improvement, the owner had full notice that a subcontractor was furnishing labor or material, and

'had not been paid, and the further fact that, during such time, the owner made payments to the principal contractor which were *then* non-permissible, become wholly immaterial to said subcontractor when the owner fully settles with the principal contractor after the lapse of 30 days from the subcontractor's last item of labor or material, and at a time when the subcontractor had filed no claims for a lien. (Sec. 3093, Code, 1897.)

MECHANICS' LIEN: Failure to File Claim—Estoppel. An owner
3 who induces a subcontractor to refrain from filing a claim for a lien within the time provided by law, under a promise that the claim will be paid by the owner, will not, thereafter, be permitted to plead that the claim was filed too late. Evidence held insufficient to establish an estoppel.

APPEAL AND ERROR: Finding of Trial Court in Equity Cause.
4 The findings of fact by the trial court in an equity cause are persuasive with the appellate court on hearing *de novo.*

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JUNE 27, 1918.

ACTION to foreclose a mechanics' lien. Decree dismissing plaintiff's petition. Plaintiff appeals.—*Affirmed.*

*C. W. Bingham,* for appellant.

*Tourtellot, Donnelly & Swab,* for appellees.

GAYNOR, J.—I. The defendant Nehls entered into a contract with the defendant Heinbaugh to erect for him a building on a certain lot owned by Nehls. The building was con-structed by Heinbaugh under the contract.

1. MECHANICS' LIEN: subcontractor's failure to file claim within 30 days.
Material was purchased by Heinbaugh from the plaintiff, and used in the building. This was never paid for, and plaintiff brings this action against Heinbaugh to recover the amount due for the material so furnished, and to establish and foreclose a lien on the lot and on the building so erected. The amount due plaintiff for the material is not in dispute. The last item was furnished on August 11, 1916.

No claim for lien was filed until the 23d day of October, 1916, nor was any written notice of plaintiff's claim served on the defendant Nehls, prior to that time. The defendant Nehls settled with Heinbaugh and paid him in full, on the 18th of September, 1916. During the time intervening between August 11th and September 18th, defendant Nehls had more than enough money due Heinbaugh, under the contract, to satisfy all claims against the building. More than 30 days elapsed between the furnishing of the last of the material and the time when Nehls settled with Heinbaugh, and more than a month passed after Nehls had settled with Heinbaugh before plaintiff filed his claim for a mechanics' lien, and before he served on Nehls any *written* notice of the filing. If nothing further appeared, plaintiff clearly has lost his right, as a subcontractor, to enforce his claim against the owner and his property. It is claimed, however, and admitted, that defendant Nehls had actual notice of the fact that plaintiff was furnishing material for the building, on credit, during the time it was being furnished; and knew, after it had been furnished, and before he settled with Heinbaugh, that it had not been paid for. Does this fact change the situation, it appearing that no statement for a lien was filed, and no notice served upon the owner within 30 days from the date of the last item?

The statute provides (Section 3089, Code, 1897):

"Every person who shall * * * furnish any materials * * * for any building, * *. * upon complying with the provisions of this chapter, shall have for his labor done, or material * * * furnished, a lien upon such building * * * and upon the land belonging to such owner on which the same is situated."

Under this statute, the lien is dependent upon a compliance with the statute.

Section 3092 of the Code provides:

"Every person, whether contractor or subcontractor, who wishes to avail himself of the provisions of this chapter, shall file with the clerk of the district court of the county in which the building * * * to be charged with the lien is situated a verified statement * * * of the demand due him, * * * setting forth the time when such material was furnished, * * * and when completed, and containing a correct description of the property to be charged with the lien."

By the terms of this statute, this statement must be filed by a subcontractor within 30 days from the date on which the last of the material was furnished. But a failure to file the same within that period does not defeat the lien, except as against purchasers or incumbrancers in good faith, without notice, whose rights accrued after the 30 or 90 days, and before any claim for the lien was filed.

Section 3093, Code, 1897, provides that, to preserve his lien against the owner, and to prevent payments by the latter to the principal contractor, or to intermediate subcontractors, but for no other purpose, the subcontractor *must*, after commencing such labor or furnishing such material, and within 30 days after the completion thereof, serve upon such owner a *written* notice of the filing of such claim.

From these statutes it is apparent that one who furnishes material for any building is entitled to a lien for the material so furnished. This lien in favor of the principal contractor continues for 90 days, and in favor of the subcontractor, for 30 days, without any filing and without any notice. After the expiration of the 90 or 30 days, as the case may be, the lien is not available to him against purchasers or incumbrancers in good faith, without notice, unless he has filed a statement for a lien, as provided in Section 3092. If the principal contractor fails to file his claim for a lien, as provided, then his lien as against innocent purchasers, etc., is not enforcible. In the case of a subcontractor, if he fails to file a statement for a lien, as provided in the above sec-

tion, he, too, loses his lien as against innocent purchasers. etc. So, in either case, a failure to file the statement for a lien subordinates any lien to the rights of innocent purchasers whose rights accrued after 30 or 90 days, as the case may be. The lien is given for 90 and 30 days, respectively, without any action, and is protected by the statute; and after that time, some action is necessary in order to preserve the lien as against certain other people.

Section 3093 suggests another condition in case of subcontractors. The lien being preserved by the statute for 30 days, the owner, if he would protect himself against the lien, must reserve sufficient of the contract price to discharge the lien. · After 30 days, he is at liberty to pay the sums agreed to be paid for the construction of the building to those who are entitled to receive the same, without regard to any claims of subcontractors, unless the subcontractors take the steps necessary to preserve their lien beyond that period; and to this end, they are required to serve a written notice upon the owner. This written notice serves a double purpose. It continues the lien of the subcontractor, and at the same time enables the owner to protect himself against the lien by withholding from the principal contractor sufficient of the contract money to discharge the lien. Therefore, it would seem that, after the 30 days, no written notice having been served upon the owner, as required by Section 3093, the owner is at liberty to settle with the principal contractor, or to dispose of the contract money in any lawful way, without regard to the claims of the subcontractor. He is justified in assuming that the subcontractor does not desire to preserve his lien further against the property, and has elected to look to some other source for the satisfaction of his claim. So the law has made this just provision that, to preserve the subcontractor's lien, he must serve the owner, within 30 days after the completion of the work, with notice in writing that he has filed a lien, and will insist upon a lien against the prop-

erty. This is a warning to the owner not to pay any more money to the principal contractor until this debt is settled; otherwise, the property will be holden for it. If the owner does then pay the principal contractor the balance due, or any sum of money, the owner's property may be subjected to the payment of the claim. Now, in this case, the plaintiff did not serve this written notice. After 30 days, settlement was made with the principal contractor. Not having had any notice in writing, such as the statute contemplates,—no statement for a lien having been filed,—the owner was justified in assuming that the subcontractor did not desire to preserve his lien against the building; that he was looking to some other source for the satisfaction of his claim. If nothing further appeared in this record, the failure to serve this notice would defeat plaintiff in his claim, because it is conceded that he did not file his claim or serve his notice until long after the expiration of the 30 days. He did, however, file his claim on October 23d, and did then serve the notice the statute requires. It was too late then to preserve his original lien in all its fullness. However, the statute comes to the relief of subcontractors, even then, and Section 3094 of the Supplemental Supplement to the Code, 1915, provides that a subcontractor may, at any time after the expiration of said 30 days, file his claim for a lien, and give written notice thereof to the owner; and, when this is done, his lien shall have the same force and effect as if filed within the 30 days, but can be enforced against the property only to the extent of the balance due from the owner to the contractor at the time of the service of such notice upon him.

So it follows that if, after the expiration of the 30 days originally given in which to file the statement for a lien and serve the notice, and before the actual filing and the service of the notice, the owner settles with the contractor, there is nothing then available to the subcontractor, under this method of procedure. He sinned away his day of grace,

as it were, and is left without remedy against the property. That is the situation here. At the expiration of 30 days from the furnishing of the last material by the plaintiff in this suit, and during that 30 days, the defendant Nehls had money due the principal contractor, with which to discharge the obligation. No lien was filed by the plaintiff at the expiration of the 30 days, and no written notice served on the owner, Nehls. Nehls was justified in assuming that plaintiff was looking to some other source for the satisfaction of his claim, and was justified in settling, then, with the principal contractor, without regard to plaintiff's claim.

The statute requires that the subcontractor serve the owner with written notice. This is explicit. Oral notice or constructive notice cannot be substituted for the plain requirements of the statute. This, undoubtedly, was for the purpose of making certain the status of the parties, and to avoid frauds and perjury.

2. MECHANICS' LIEN: non-permissive payments.

There seems to be an impression among some that the holdings of this court are to the effect that, though no written notice is given, if the owner knew that the material was being furnished for the building and was not paid for, he could not settle with the principal contractor without protecting the subcontractor so furnishing material. These cases, when analyzed, will be found to say simply that the owner who has made a contract with the principal contractor to pay stipulated sums at stipulated times, cannot even do this, if he knows that the subcontractor is furnishing for the building material that is not paid for, provided the subcontractor thereafter completes his lien in accordance with the statute; or, in other words, that the fact that the owner pays according to his contract will not relieve him against one who furnishes material and subsequently complies with all the requirements of the statute to effectuate a lien, if he knows, before the payments are made, that the material is

being furnished for which a lien may be subsequently claimed, and is claimed.

In *Chicago Lbr. & Coal Co. v. Garmer,* 132 Iowa 282, the payments were made in accordance with the terms of the contract. The owner, at the time he made the payments,— though in accordance with his contract,—had knowledge that plaintiff was furnishing material. It is said in that case:

"If she [the owner] was aware of this, the law seems to be well settled that payment to the contractor will not constitute a defense."

This means a defense against one who subsequently complies with all the statutory requirements, and preserves his lien against the property.

It will be noticed, in those cases in which such expressions as the above are used, that the subcontractor did comply with the statute. This is also true in *Nancolas & Howard v. Hitaffer & Prouty,* 136 Iowa 341. In this *Nancolas* case, the claim and affidavit were filed within the time required by the statute, and the question was whether or not payments made strictly in accordance with the requirements of the contract would protect the owner against the claims of the subcontractor so preserved. In that case, it is said:

"It appears from the record that Bartlett [the owner] knew, very soon after the work on this building commenced, that the hardware was being furnished by these plaintiffs; and, this being true, he had no right to pay out the reserve funds which he held in his hands on other claims for which no lien had been filed; and, having done so, he is liable for the plaintiff's claim."

The basis of this statement is that the plaintiff had complied subsequently with all the requirements of the statute entitling him to a lien; and until his right to do so had expired, the owner, knowing that he was furnishing material,

could not protect himself by simply showing that he paid in accordance with his contract.

Turning back, in the history of litigation on this subject, to our early cases, we find *Lounsbury v. Iowa, M. & N. P. R. Co.*, 49 Iowa 255. At the time this case was decided, the statute provided, speaking of subcontractors, that:

" 'To preserve his lien as against the owner, and to prevent payments by the latter to the principal contractor, * * * but for no other purpose, the subcontractor must, within the 30 days as provided in Section 6, serve upon such owner * * * a written notice of the filing of said claim.' * * * It will be seen that a 'written notice of the filing of the claim' must be given the owner. That is to say, the owner must be notified that a claim has been filed in the clerk's office. When he receives such a notice, the owner may examine the claim filed, and determine its sufficiency; but whether he does so or not, all after payments are made at his peril. The opportunity, however, must be given him to determine whether he can safely pay or not. This is a statutory right, that cannot be omitted. As this is a statutory lien, it matters not what notice or knowledge the owner may have, if the required notice is not given, at least in substance. No such thing as constructive notice is known to, or recognized by, the statute. Now the only notice given the defendant was the original notice, served when the action was commenced. We have looked in vain for any statement therein that a claim for a lien had been filed in the clerk's office or elsewhere."

In *Chicago Lumber Co. v. Woodside*, 71 Iowa 359, an action establishing and foreclosing a submechanics' lien, the last item appears to have been furnished on October 8, 1885. Within 30 days therefrom, the subcontractor filed a statement for a lien and served notice, as required by the statute. Before this notice was served, however, the owner

had notice that the material was being furnished. It was held that, where the owner knows that subcontractors are furnishing materials for his building, he should not be excused in paying the principal contractor, until the time expired in which the lien for the material so furnished might be perfected by the filing of statement for the lien and service of notice, and it was said:

"Nor is it any hardship upon him to require that he shall withhold payment during the time which the law allows the subcontractor to perfect his lien."

In that case, the subcontractor did perfect his lien within the time, and the owner was held, notwithstanding he had made payment, we may assume, strictly in accordance with the terms of his contract prior to the filing of the lien.

*Frost v. Rawson,* 91 Iowa 553, was an action by a subcontractor to enforce a mechanics' lien. The statute then was, in respect to the matter under consideration, substantially as now. It was said:

"When the different sections and provisions of the law are considered, the proper construction seems clear. The notice to preserve the lien is a *written* one, served on the owner. It is not a verbal notice that a claim has been filed, as was done in this case."

In *Merritt & Allen v. Hopkins,* 96 Iowa 652, an action by a subcontractor to enforce his lien, the plaintiff filed his statement for the lien within the time, but did not serve written notice upon the owner of the filing of the claim. However, on the next day after it was filed, and within the 30 days, he commenced an action to establish and foreclose his lien. An original notice was served. It was claimed that the service of the original notice was sufficient compliance with the statute requiring written notice of the filing of the lien to be served upon the owner. The court said:

"The original notice was in the usual form in such cases. It stated the amount claimed, and described the property upon which the lien was sought, but made no reference to the filing of the claim for a lien."

Then, citing the statute as it then was, substantially the same as the statute now under consideration, the court said:

"In *Lounsberry v. Railroad Company*, 49 Iowa 255, it was held that the failure to serve written notice on the owner that a lien had been filed, defeats the lien of a subcontractor. * * * In that case, as in this, an action was commenced in which an original notice was served; but, as that did not state that a lien was filed, it was held that it could not be regarded as a written notice of the filing of the lien. * * * This seems to be conclusive against the establishment of the liens of Merritt & Allen."

See, also, *Wheelock v. Hull*, 124 Iowa 752.

In *Page & Son v. Grant*, 127 Iowa 249, the defendant insisted that he had paid the purchase price in full, in strict accord with the terms of his contract, and could not be made liable to subcontractors for any further or greater sum. He admitted, however, that, during the process of the work, and before he had made full payment in accordance with the terms of his contract, he acquired knowledge from certain subcontractors that they were furnishing material for his building that had not been paid for, and, as to one of them, before the last two payments were made, and as to the other, before the last payment was made. This court said:

"As to these, the owner was not, under our more recent holdings, as well as some of the earlier ones, justified in paying the principal contractor, even in strict accord with the terms of the contract [citing authority]. If the owner observes the law, he cannot, of course, be made liable to subcontractors in such a way or to such an amount as to increase or add to the contract price of the building. But by

failing to observe his original contract as to time of payment, or to follow the law as to the rights of subcontractors, he may become liable for more than the original contract price."

In this case, the statute which the owner failed to observe, and to which reference is made in the opinion, is that which gives to a subcontractor a lien for 30 days after the furnishing of the last item of material, without any statement, and the right to continue his lien by filing a statement and by serving notice in writing upon the owner of that fact. In this case, the last item in Page & Sons' account was on October 28, 1901, and it was found that the notice required by the statute was served within the statutory time. The court said:

"Going to the record, we find that the objection is not that no notice was, in fact, given, or to the form thereof, but to the proofs of service thereof."

The court held that no proper objection was urged to the proof, and that the proof should be held sufficient, and that it showed service in time. So the holding of this case simply is that payment by the owner to the principal contractor, when he knows the subcontractors are furnishing material, though the payments are made strictly in accordance with the terms of his contract, will not protect him against a subcontractor who, within the statutory period, perfects his lien by filing a claim for a lien and serving the written notice required by the statute.

*Johnson & Sons v. Des Moines, I. F. & N. R. Co.*, 129 Iowa 281, holds simply, so far as this point under consideration is concerned, that, if the owner is indebted to the principal contractor at the time the subcontractor commenced his action to enforce his lien, the service of the 30 days' notice is immaterial, because the owner had in his hands funds sufficient to meet the demands of the subcontractor at the time suit was commenced. In this case, the claim for a lien was filed after the 30 days

had expired, and the subcontractor was only entitled to a claim against so much of the fund as was in the hands of the owner at the time; and sufficient was then in his hands.

In *Simonson Bros. Mfg. Co. v. Citizens St. Bank,* 105 Iowa 264, it is held that the statement for a lien was filed within 30 days of the time of delivering the last of the material, and that, on that day, plaintiff served written notice of its claim. It was said:

"It is not denied that, prior to this time, the bank had knowledge of the fact that Lofgren was purchasing material from plaintiff. Defendant claims to have paid Lofgren in full."

It was also said that the payments were made in accordance with the terms of the contract. This was its defense, and it was held that defendant had no right to settle with Lofgren in full, under the circumstances disclosed in the record. The case of *Epeneter v. Montgomery County,* 98 Iowa 159, is distinguished.

We think that, in recognition of the justice of the doctrine announced in these cases, the legislature enacted the following:

"No owner of any building * * * upon which a sub-contractor's mechanics' lien may be filed under the provisions of Section 3092 of the Code shall be liable to an action by the original contractor for compensation for work done or materials * * * furnished for any building * * * until the expiration of 30 days from the completion of said building * * * unless the original contractor shall furnish to the owner of said building * * * receipts and waivers of claims for mechanics' liens, signed by all persons who performed any labor or furnished any material * * * for said building, * * * or unless the original contractor shall furnish to the owner a good and sufficient bond to be approved by said owner, conditioned that said owner shall be held harmless from any loss which he may sustain by reason of the filing of sub-

contractor's mechanics' liens." Section 3093, Supple ment to the Code, 1913 (Chapter 267, Acts of the Thirty fifth General Assembly, Sec. 1.)

This statute is intended to serve a double purpose: To protect submechanic lien holders, and to preserve the funds in the hands of the owner to the satisfaction of such liens as may be properly preserved; and second, to protect the owner from double liability. It is true, in the case under consideration, that the record does not directly show when this building was completed; but we must assume that it was completed at least as early as the 18th day of September. The plaintiff did not file his claim or serve his notice until the 23d of October, which was more than 60 days after it had completed furnishing material for the building, and more than 30 days after the building itself was completed. At the time the lien was filed and the notice given, no funds belonging to the principal contractor, or out of which liens could be paid, were in the hands of the owner. It followed, therefore, that the plaintiff has no ground for insisting upon any lien against the property, unless he is protected by the matters further pleaded by him, to the consideration of which we now turn our attention.

II. It is claimed, however, that the defendant is estopped from insisting that the claim was not filed and notice served in conformity with the statute. The facts urged upon which the estoppel is predicated are stated in this language:

3. MECHANICS' LIEN: failure to file claim: estoppel. That, soon after the last of the materials were furnished, under the contract, and within the 30 days, the plaintiff presented its account to the defendant Nehls for pay- ment. The plaintiff then told the defendant that the account would have to be settled, or it would file a statement for a mechanics' lien against the building. The defendant informed the plaintiff that he need not file any statement for a mechanics' lien, for the reason that the principal contract-

or had given a bond of indemnity, which bond was for the purpose of paying plaintiff's claim, with other claims for material and labor entering into the erection of the building, and the defendant would see that the plaintiff's bill was paid. The plaintiff, a second time, and within the period given for filing a statement for a lien, presented its account to this defendant, and was informed that a bond had been filed by the principal contractor; that said bond was for the payment of all claims for materials that were used in the building, and that plaintiff's claim would be paid; that it wasn't necessary to file a statement for a mechanics' lien. Relying upon the word of defendant, and believing it to be true, plaintiff did not file its claim within the statutory period. It would have done so, except for the assurance given by the defendant. Therefore, defendant is now estopped from insisting that plaintiff should be defeated because of its failure to file a statement for a lien, and to serve the notice within the statutory period.

We are inclined to believe that this plea would be good, if sustained by the evidence. It appears without question that, before the plaintiff had completed furnishing the material, it sent one of its agents to the defendant to see what provision was made for the payment of the claim. This was before all the material was delivered. Three visits seem to have been made. There is controversy as to what transpired at these several visits. The burden is on the plaintiff to sustain his alleged estoppel. It is claimed that this agent informed the defendant that the principal contractor had not paid, and that it would have to hold the owner responsible; that the defendant owner then said:

"I have taken out a bond to be sure that everything is paid, and I will see that it is paid. I will take it up with the factory [meaning the plaintiff]. I don't want the lien filed, as it would hurt the property." To this the agent responded, "We want somebody to pay this bill." The de-

fendant said: "It isn't up yet.  Let it go for a few days and see if the principal contractor, Heinbaugh, won't settle." Defendant then said he would see that the bond company would take care of it; that he would see that everything was taken care of; that substantially the same thing was said on the other visits, with the further statement that, since he had a bond, he wasn't going to pay twice; that the bond would have to pay it.

Plaintiff's witness further. says that the reason why these visits were made was to ascertain whether the bill would be paid within the 30 days, and if not, a lien would be filed; that they did not file the lien because of the statement made by the defendant.

On cross-examination, this witness said:

"The defendant said he would see the bond company's representatives and see that we got our money.  The defendant did not promise to pay the bill, but said he would see that the bond company would pay; that he had a bond and would see that the bond company would pay it.  He didn't say at any time that he would pay the bill.  No request was made by us to see the bond, and the conditions of the bond are not known.  Defendant said, in these conversations, he thought Heinbaugh would pay the bill.  This was about the middle of July, a trifle less than a month before we furnished the last material."

He said further, on cross-examination:

"I told him we would hold the building responsible for the bill; that we would file a lien within the time limit. In substance, I told him that we would hold him personally responsible for the bill.  He told me he was protected by a bond, so far as he was concerned.  He didn't want us to file a lien.  He said it didn't make any difference to him financially whether we filed a lien or not; that, having a bond, it would not make any difference to him; that, so far

as he was concerned, he was protected by a bond. He told me to see Heinbaugh. I saw Heinbaugh."

Plaintiff's testimony tends to show that the defendant said that he had a bond, and that he understood that the bond would protect plaintiff's claim; that the bond company would do it. He said he had filed a claim with the bond company, and said:

"He gave me to understand in November that the bond company was to pay. He said he would do all he could to get our pay and have our bill cleaned up. He gave us then to understand that he was entirely protected by the bond, so that he would not have to pay anything."

The defendant's testimony contradicts the plaintiff's. Defendant admits having conversations with Pettis, plaintiff's agent, and that Pettis told him that his company was furnishing millwork for the house, and that it had not received its money for the millwork, and was thinking of putting a lien on to protect itself. Defendant says that he then said to Pettis:

"If you want to put a lien on, I couldn't stop you; and further, I don't care if you put a dozen liens on. I am protected by a bond. I did not tell him, in that conversation or in any conversation, that I didn't want him to file a lien, or that I would see that the bond company would pay the bill. I asked him if he had seen Heinbaugh, and he said, 'No.' I told him Heinbaugh might pay the bill if he was seen. I said, 'You are using the man rather rough to do this behind his back. You better see him.' He said he would."

Defendant further said that he called Heinbaugh up, the next morning, and told him what the plaintiff's representative had said. The next morning, Heinbaugh came to defendant's house, and they again discussed what plaintiff's representative had said; and Heinbaugh said that he had just come from the mill, and had satisfied the mill people.

Defendant further said that he never told Pettis that he would see the bonding company, or that he would see that the bonding company paid plaintiff. He never said that, if plaintiff didn't file a lien, he would see that the bill was taken care of. After Heinbaugh told him he had satisfied the mill people, Nehls dropped the matter, and, on the 18th day of September, settled with Heinbaugh. Nehls further testified that neither the plaintiff nor any of its agents told him, after they had seen Heinbaugh, whether Heinbaugh had satisfied them or not. He said, "I supposed that Heinbaugh had satisfied the mill in some way before I made the settlement."

Heinbaugh testified for the defendant Nehls and said that, after Nehls called him up, and informed him of the conversation with plaintiff's representative, he called on the plaintiff, and the plaintiff told him they were going to file a lien; and he told the plaintiff that, if they would be a little easy, they would have their money in a few days.

"They agreed to wait a few days,—ten days I believe I asked them for. So they agreed to that. During that time, I gave them $300. I don't know which job it was applied to. I had other jobs. When I paid them the $300, they said they ought to have all of it, and I told them I couldn't raise it all then; that I could, probably, in a few days; and they didn't say anything more about the lien. I then saw the defendant. He asked me whether I had seen the Sash & Door Company. I said 'Yes.' He asked how I came out. I said I had satisfied them. I don't remember the exact words. He said 'Good.' It was after this that I settled with the defendant."

The witnesses who gave this testimony were before the trial judge. He had an opportunity to judge of their credibility and undoubtedly did so. In reaching his conclusion,

he found against plaintiff's claim of estoppel.

4. APPEAL AND ERROR: finding of trial court in equity cause. Of course, this case is triable *de novo* here, and it is our duty to pass upon the record as made, as an original proposition. But we cannot relieve ourselves of the feeling that the district court was in much better position to judge of the credibility of these witnesses than it is possible for us to be. Moreover, when we consider the reasonableness of the stories told, upon which the estoppel is predicated, we are not inclined to adopt plaintiff's contention. This record discloses no motive on the part of the defendant to avoid the payment of this claim. He had the money in his hands, out of which the claim could be paid, and relieve his property and himself from any double liability. It occurs to us that, after Heinbaugh had come to this plaintiff and had made some adjustment,—paid them $300—it doesn't matter where that was applied,—and they agreed to some extension, no matter for how long, they should have notified the defendant of that fact. Instead of that, they never communicated with the defendant again, until long after the time for filing the claim had expired, and defendant had paid the principal contractor in full. It may be noted, as a fact of common observation, that materialmen stand in peculiar relationship to these contractors and builders. Through them, much of the material is sold. A motive not to offend by hasty requirements of settlement is disclosed. It seems to have been the thought here. At least, the suggestion is in some manner explanatory of plaintiff's delay, rather than the statements claimed to have been made by the defendant. However, as the burden rested on the defendant to establish the facts upon which the estoppel rests, he cannot succeed in this case until he has shown, by at least a fair preponderance of the evidence, that the facts are as he claims them to be. This we think he has not done.

The fact that the district court, with these witnesses

before it, so concluded, gives additional weight to the thought that comes to us upon a reading of the record. The estoppel not having been sustained by sufficient evidence, and the plaintiff having failed to file his lien, as required by the statute, we think the court was right in denying him the relief prayed for, and the case is, therefore,—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.